**GUARDIAN FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, et al.**

No. 77–1550.

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1978.

Decided Nov. 13, 1978.

William W. Rogal, Washington, D. C., with whom Edward F. Sloane and Charles E. Sloane, Washington, D. C., were on the brief, for appellant.

John E. Gunther, Washington, D. C., a member of the Supreme Court of Virginia by special leave of the Court pro hac vice with whom Harold B. Shore, Associate Gen. Counsel, Washington, D. C., was on the brief, for appellee.

Leonard H. Schwall, New York City, was on the brief, for amicus curiae.

Before LEVENTHAL and MacKINNON, Circuit Judges, and JAMESON,* United States Senior District Judge for the District of Montana.

Opinion for the Court filed by LEVENTHAL, Circuit Judge.

LEVENTHAL, Circuit Judge:

This case involves a challenge to the procedural validity of regulations issued without the prior notice and comment procedures of section 553 of the Administrative Procedure Act (the "APA").[1]

Appellant Guardian Federal Savings and Loan Association ("Guardian") is a federally chartered savings and loan association. Its accounts are insured by appellee Federal Savings and Loan Insurance Corporation ("FSLIC") pursuant to Title IV of the National Housing Act of 1934 (the "NHA").[2] The FSLIC is an agency of the United States as defined by APA subsection 551(1).[3] It operates under the direction of the Federal Home Loan Bank Board (the "Board"), an independent agency of the United States in the Executive Branch. The Board was given plenary authority to charter, regulate and supervise federal sav-

ings and loan associations by the Home Owners' Loan Act of 1933.[4]

The regulations involved in this case are Insurance Regulations 563.17-1[5] and 571.2,[6] issued by FSLIC, and Bulletin PA-7a,[7] issued by the Board's Office of Examinations and Supervision ("OES"). The procedural validity of Regulation 563.17-1 is uncontested. This regulation largely restates the comprehensive, discretionary authority granted to FSLIC by 12 U.S.C. § 1726(b) (1976). It provides, inter alia, that each FSLIC-insured institution "shall be audited at least once in each calendar year by auditors and in a manner satisfactory to [FSLIC] in accordance with general policies from time to time established by the Board . . . ."

Challenged Regulation 571.2: (1) requires that insured institutions "must satisfy the audit requirement of § 563.17-1(a) . . . by means of an audit by a public accountant or internal auditor" (12 C.F.R. § 571.2(b)); (2) specifies in considerable detail criteria that must be met before an audit or an auditor will be satisfactory to FSLIC (12 C.F.R. § 571.2(c)); and, (3) delegates the agency's broad authority over such matters to the Chief Examiner of the district in which an insured institution's home office is located (12 C.F.R. § 571.2(d)). In addition, Regulation 571.2 contains a provision allowing an insured institution to seek a waiver from burdensome audit requirements that may be granted in the discretion of the Chief Examiner (12 C.F.R. § 571.2(e)). The regulation also indicates that additional specifications for audits or auditors may be issued from time to time by OES or by the Chief Examiner (12 C.F.R. § 571.2(d)(1)). OES Bulletin PA-7a is one such directive. It details criteria that auditors must meet in order to be satisfactory to FSLIC.

---

\* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. 5 U.S.C. § 553 (1976).

2. 12 U.S.C. § 1724 et seq. (1976). Guardian's predecessor, Northport Federal Savings and Loan Association, entered into an insurance agreement with FSLIC on August 6, 1935, which currently remains in effect. Record at 94-95.

3. 5 U.S.C. § 551(1) (1976).

4. 12 U.S.C. § 1461 et seq. (1976).

5. 12 C.F.R. § 563.17-1 (1978).

6. 12 C.F.R. § 571.2 (1978).

7. 42 Fed.Reg. 29962 (1977) (as modified).

The District Court dismissed Guardian's complaint, ruling that the challenged regulations had been validly promulgated without notice and comment procedures. We affirm. We have concluded that the challenged regulations come within APA subsection 553(b)(A) and thus were exempted from the requirement for public notice and comment.

Section 553 of the APA, set forth in the margin,[8] prescribes the procedures that must be satisfied before a "rule" within the APA definition may be promulgated.[9] The general policy of section 553 is to provide for public notice and comment procedures before the issuance of a rule. This public participation assures that the agency will have before it the facts and information relevant to a particular administrative problem, as well as suggestions for alternative solutions. Public rulemaking procedures increase the likelihood of administrative responsiveness to the needs and concerns of those affected. And the procedure for public participation tends to promote acquiescence in the result even when objections remain as to substance. Congress has, however, provided for a number of exceptions to notice and comment procedures. These accommodate situations where the policies promoted by public participation in rulemaking are outweighed by the countervailing considerations of effectiveness, efficiency, expedition and reduction in expense.

It is conceded that the challenged regulations are "rules" within the definition of subsection 551(4).[10] Ordinarily such a concession would trigger the basic procedures governing "rule making" set forth in sec-

**8.** Section 553, Rule making:

(a) This section applies, according to the provisions thereof, except to the extent that there is involved—

(1) a military or foreign affairs function of the United States; or

(2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedures thereon are impracticable, unnecessary, or contrary to the public interest.

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

(2) interpretative rules and statements of policy; or

(3) as otherwise provided by the agency for good cause found and published with the rule.

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

5 U.S.C. § 553 (1976).

**9.** APA subsection 551(4) provides:

(4) "rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing

5 U.S.C. § 551(4) (1976).

**10.** Appellees' Brief at 12; 5 U.S.C. § 551(4) (1976).

tion 553.[11] The issue here is whether the agency has demonstrated that this case is governed by the exceptions to section 553.

### FSLIC investigative powers

FSLIC argues that section 553 procedures are not applicable to rules encompassing audit specifications and auditor qualifications because they are regulations incidental to the exercise of FSLIC's investigative authority. The agency cites the following APA provision in section 555:

> (c) Process, requirement of a report, inspection, or other investigative act or demand may not be issued, made, or enforced except as authorized by law. A person compelled to submit data or evidence is entitled to retain or, on payment of lawfully prescribed costs, procure a copy or transcript thereof, except that in a nonpublic investigatory proceeding the witness may for good cause be limited to inspection of the official transcript of his testimony.

We see no relevance in subsection 555(c). Its purpose and effect is to afford certain procedural protections to a person subject to agency investigation, *i. e.*, an assurance of lawfulness in the investigation, and the right to retain, procure, or at least inspect the data or evidence he has been compelled to submit.

A point not argued by FSLIC but more troubling to the court stems from the cases that recognize a distinction between agency action that is subject to the APA, and the exercise of investigative authority that the APA was not intended to regulate.[12] These decisions in effect imply a classification—of investigative acts—that is set apart from either adjudication or rulemaking. The distinction is based not on the terms of the APA but, apparently, upon an implication, supported by a single reference in the legislative history,[13] and upon what might fairly be described as a sense of manifest and historically recognized need for agencies to be able to issue subpoenas and conduct other investigative activities without constraint of the procedural requirements that the APA established for essentially regulatory actions. Assuming the validity of the distinction, it may prove difficult to differentiate between regulatory actions that are subject to APA procedures and investigative activity that may have only incidental regulatory impact. In this case, however, it is clear that the challenged rules are regulatory in nature and thus within the compass of APA procedures. FSLIC has not required merely the production of a financial report,[14] but rather has outlined with considerable specificity the actions that it expects the regulated industry to undertake in order to produce an audit report satisfactory to the agency. The APA definition of a rule specifically includes requirements bearing on accounting practices.[15]

Again there may not always be a bright line between accounting rules and reporting requirements. However the regulations before us are fairly within the general catego-

---

**11.** APA section 551(5) provides:
"rule making" means agency process for formulating, amending or repealing a rule
5 U.S.C. § 551(5) (1976).

**12.** *See, e. g., In re FTC Line of Business Report Litigation*, No. 77–1728, slip op. at 16–23 (D.C. Cir. July 10, 1978); *United States v. W. H. Hodges & Co.*, 533 F.2d 276, 278 (5th Cir. 1976); *Genuine Parts Co. v. FTC*, 445 F.2d 1382, 1388 (5th Cir. 1971); *Montship Lines, Ltd. v. Federal Maritime Board*, 111 U.S. App.D.C. 160, 167, 295 F.2d 147, 154 (1961). *See also* K. Davis, Administrative Law Treatise § 3.01 (1958). For example, the issuance and enforcement of subpoenas is not governed by

APA procedures. *See In re FTC Line of Business Report Litigation, supra,* at 17–18; *FTC v. Lonning,* 176 U.S.App.D.C. 200, 539 F.2d 202 (1976).

**13.** 92 Cong.Rec. 5648 (1948) (statement of Congressman Walter, a principal sponsor of the APA).

**14.** *See, e. g., In re FTC Line of Business Report Litigation,* No. 77–1728 (D.C. Cir. July 10, 1978); *United States v. W. H. Hodges & Co.,* 533 F.2d 276 (5th Cir. 1976).

**15.** *See* note 9 *supra.*

ry of prescription of accounting practices,[16] and the applicability of section 553 procedures is not to be gainsaid by a far-reaching expansion of a category of investigative activities that lie wholly outside the APA.

### Subsection 553(a)(2): public contracts

We note, but bypass, FSLIC's reliance on 5 U.S.C. § 553(a)(2), which excepts from the section 553 procedures "a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." FSLIC argues first that the agreement between the agency and Guardian, which forms the foundation of the insurer/insured relationship, is a "contract" within this exception,[17] and then that the exception of subsection 553(a)(2) extends not only to rules establishing the initial terms and conditions of the agreement, but also to all subsequent rules affecting the insured institutions.[18] We are doubtful whether the term "contract," as it is used in subsection 553(a)(2), reaches beyond the ordinary meaning of a bargained-for, voluntary agreement. To extend the exception to an agreement that is mandatory as this one is (NHA section 403),[19] would open the door to substantive regulation without public participation. However, we find it unnecessary to enter a formal ruling on the point.

### Subsection 553(b)(A): interpretative rules, general statements of policy, and rules of agency procedure

 This case turns on subsection 553(b), which provides in part:

> Except when notice or hearing is required by statute, this subsection does not apply—
>
> (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice

5 U.S.C. § 553(b) (1976).

1. Although the term "interpretative rule" is not expressly defined by the APA, its essential meaning is readily distinguished from that of a "substantive" or "legislative" rule. A substantive or legislative rule has the force of law; an interpretative rule is merely a clarification or explanation of an existing statute or rule.[20] The Attorney General's Manual defines interpretative rules as "rules or statements issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers."[21] Judicial review of a sub-

---

**16.** This is subject to the further issue whether they are mandatory, or rather are indicative, with latitude for judgment in application.

**17.** Appellees' Brief at 28. *See* note 2 *supra*.

**18.** Appellees' Brief at 29.

**19.** That section provides:

> (a) It *shall* be the duty of [FSLIC] to insure the accounts of all Federal savings and loan associations, . . .
>
> (b) Application for such insurance *shall* be made immediately by each Federal savings and loan association, . . . *shall* be in such form as [FSLIC] shall prescribe, and *shall* contain an agreement (1) to pay the reasonable cost of such examinations as [FSLIC] shall deem necessary in connection with such insurance, and (2) if the insurance is granted to permit and pay the cost of such examinations as in the judgment of [FSLIC] may from time to time be necessary for its protection and the protection of other insured institutions, . . .

12 U.S.C. § 1726 (1976) (emphasis supplied).

**20.** *Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 290, 507 F.2d 1107, 1113

(1974); *Eastern Kentucky Welfare Rights Org. v. Simon*, 165 U.S.App.D.C. 239, 251, 506 F.2d 1278, 1290 (1974), *vacated*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (lack of standing); *Nat'l Assoc. of Insurance Agents, Inc. v. Board of Governors of the Federal Reserve System*, 160 U.S.App.D.C. 144, 146, 489 F.2d 1268, 1270 (1974); *Gibson Wine Co. v. Snyder*, 90 U.S.App.D.C. 135, 137–38, 194 F.2d 329, 331–32 (1952). *See* Administrative Procedure Act, Legislative History, S.Doc. No. 248, 79th Cong., 2d Sess. 18 (1946); *id.* at 313 (remarks of Sen. McCarran).

**21.** U.S. Dept. of Justice, Attorney General's Manual on the Administrative Procedure Act 30 n.3 (1947). *See also* S.Doc. No. 248, *supra* note 20, at 18 ("merely interpretations of statutory provisions"), 313 (remarks of Sen. McCarran) ("merely adaptations of interpretations of statutes"). The courts have given deference to the interpretations of the Attorney General's Manual "because of the role played by the Department of Justice in drafting the legislation." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 546, 98 S.Ct. 1197, 1213, 55 L.Ed.2d

stantive or legislative rule is limited by the provisions of APA section 706, but a court is free to make an independent inquiry into the correctness or propriety of an interpretative rule, although substantial deference is accorded to the agency's interpretation.[22] Naturally there are instances when it is difficult to classify a given rule as substantive or interpretative. We find that in certain particulars the regulations in this case are clearly interpretative in nature.

Regulation 563.17–1, promulgated with conceded procedural regularity,[23] interprets the relevant provision of the NHA, 12 U.S.C. § 1726(b), as authorizing FSLIC to "at any time make, or cause to be made, an audit of an insured institution" to be conducted "by auditors and in a manner satisfactory to [FSLIC] in accordance with general policies from time to time established by the Board." 12 C.F.R. § 563.17–1(a)(2). We agree with this interpretation of the statute. Subsection 1726(b) provides that insured institutions must "permit and pay the cost of such examinations as in the judgment of [FSLIC] may from time to time be necessary for its protection and the protection of other insured institutions . . . ." The term "examinations" encompasses not only "bank examinations," a term of art that has developed over the years,[24] but also such other financial investigations as FSLIC in its judgment deems necessary for its protection and the protection of other insured institutions. This includes audits required by Regulation 563.-17–1(a)(2). The statutory phrase requiring the institutions to "permit such examinations as in the judgment of [FSLIC] may . . . be necessary" gives broad discretion to require audits by persons other than FSLIC staff.

2. Challenged Regulation 571.2 requires that an insured institution "must satisfy the audit requirement of § 563.17–1(a) . . . by means of an audit by a public accountant or internal auditor." In substance the FSLIC has exercised an option to require that audits be performed by accountants from the private sector. That option is given to the government by this provision in Regulation 563.17–1(a)(2): "[FSLIC] may at any time make, or cause to be made, an audit of an insured institution. . . ." (Emphasis supplied.) However, the instruction in Regulation 571.2 that audits be conducted exclusively by non-agency accountants is not an interpretative rule. It purports to change the course of agency policy. Nevertheless, it stays within the subsection 553(b)(A) exception because it is in essence a rule of "agency . . . procedure."

When Regulation 571.2 was originally published it contained the introductory sentence: "Commencing January 1, 1968 the Board's examiners will not include an audit in the scope of a periodic examination." 31 Fed.Reg. 5821 (1966). That sentence is unquestionably one of agency procedure. Since the regulation went on to state the necessary consequence of the new procedural rule, the introductory sentence was superfluous and has been deleted in the current regulation. Audits are still required by Regulation 563.17–1, and they will not be performed by staff auditors; thus, the insured institutions necessarily must "satisfy the audit requirement . . . by means of an audit by a public accountant or internal auditor." That provision, which remains unchanged in the challenged regu-

460 (1978); *see Power Reactor Development Co. v. International Union of Electrical Workers*, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961); *United States v. Zucca*, 351 U.S. 91, 96, 76 S.Ct. 671, 100 L.Ed. 964 (1956).

**22.** S.Doc. No. 248, *supra* note 20, at 18. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973); *United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 674, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158

(1971). *See generally* K. Davis, Administrative Law Treatise § 5.05 (1958 & 1976 Supp.). One of the reasons why interpretative rules were excepted from notice and comment procedures was that they would be subject to special judicial scrutiny. S.Doc. No. 248, at 18; *id.* at 313 (remarks of Sen. McCarran).

**23.** Appellant's Brief at 3.

**24.** *See* 12 C.F.R. § 563.17–1(a)(1) (1978).

lation, is in substance no more than the procedural rule stated in terms of its inevitable result.

■ Also procedural is the provision in Regulation 571.2 delegating authority from FSLIC to the Board's Chief Examiners for the various regional districts.[25]

■ 3. What remains of the challenged regulations are the provisions that specify the criteria that audits and auditors must fulfill in order to produce an audit report "in a manner satisfactory to [FSLIC]." 12 C.F.R. § 563.17–1(a)(2). We conclude that these aspects of the regulations constitute "general statements of policy" within APA subsection 553(b)(A).

■ The term "general statements of policy," has been explicated in the Attorney General's Manual as embracing "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power."[26] As this court has had occasion to note, a critical test of whether a rule is a general statement of policy is its practical effect in a subsequent administrative proceeding: "A general statement of policy . . . does not establish a 'binding norm.' It is not finally determinative of the issues or rights to which it is addressed." *Pacific Gas & Electric Co. v. FPC*, 164 U.S.App.D.C. 371, 376, 506 F.2d 33, 38 (1974). When the agency applies the policy in a particular situation, it must be prepared to defend it, and cannot claim that the matter is foreclosed by the prior policy statement.

■ A general statement of policy that has not been issued under section 553 as a binding rule must leave the administrator free to exercise his informed discretion in the situations that arise. The challenged regulations in this case effectively preserve the administrator's discretion. Regulation 571.2, as it is supplemented by OES Bulletin PA–7a, does use directive language in specifying the criteria that audits and auditors must fulfill in order to produce an audit report that is satisfactory to the agency. However, Regulation 571.2(d)(1) states:

> The Chief Examiner shall determine whether an auditor is satisfactory to [FSLIC], whether an audit was conducted in a manner satisfactory to [FSLIC], and whether a report of audit is to be accepted. If at any time, it is found that a public accountant or internal auditor has not followed recognized rules of ethics or conduct, was not in fact independent, has knowingly made any material misstatement of fact or circumstance or any material misrepresentation of any kind, or has otherwise failed to meet any of the requirements set out in this statement, in bulletins issued by the Office of Examinations and Supervision,[27] or in instructions issued by the Chief Examiner, the Chief Examiner *may* reject the audit
>
> . . . .

12 C.F.R. § 571.2(d)(1) (emphasis supplied).

■ While failure to comply with any of the agency's directives "may" result in the rejection of the audit, the Chief Examiner has discretion to accept a non-conforming audit report, or for that matter to prescribe additional requirements in a particular case. The form of a regulation is obviously not controlling; substance and effect will determine whether a rule is a "general statement of policy." If it appears that a so-called policy statement is in purpose or likely effect one that narrowly limits administrative discretion, it will be taken for what

---

25. The heart of Regulation 571.2 is subsection (d), which provides in part:

> The Chief Examiner shall determine whether an auditor is satisfactory to [FSLIC], whether an audit was conducted in a manner satisfactory to [FSLIC], and whether a report of audit is to be accepted.

12 C.F.R. § 571.2(d) (1978).
This delegation of authority is clearly permitted by 12 U.S.C. § 1725(c)(5) (1976) and constitutes

a rule of agency procedure within the subsection 553(b)(A) exception to the APA's notice and comment procedures.

26. Attorney General's Manual, *supra* note 21, at 30 n.3.

27. OES Bulletin PA–7a is a bulletin of the type referred to by this phrase.

it is—a binding rule of substantive law.[28] In this case the record amply supports our determination that the administrative discretion of the Chief Examiner has been preserved.

In 1975, Guardian refused to comply with explicit directions in an OES bulletin outlining the nature of the accountant's "engagement letter" that was required for an audit to be acceptable to FSLIC.[29] The cognizant Chief Examiner notified Guardian that the 1975 audit would be unacceptable unless Guardian complied with the directive.[30] Guardian refused to comply. Instead, it had the nonconforming audit performed. The Chief Examiner, in an exercise of his discretion, accepted the audit report for 1975 while cautioning Guardian that its compliance with agency directives was expected in the future.[31]

▮ The mandatory tone of the specifications for audits and auditors doubtless encourages compliance. However, an opportunity for an individualized determination is afforded. Nor is there merit to the argument that such specific and detailed requirements cannot qualify as a "general" statement of policy. In the APA context, the term "general" includes detailed requirements provided that they are of general as contrasted with particular applicability.[32]

▮ The mere existence of some discretion is not sufficient, although it is necessary, for a rule to be classified as a general statement of policy. Thus, stringent substantive commands are not removed from section 553 because they have some provision for discretionary waiver.[33] A matter of judgment is involved in distinguishing between rules, however discretionary in form, that effectively circumscribe administrative choice, and rules that contemplate that the administrator will exercise an informed discretion in the various cases that arise.

▮ After taking into account several attributes of the challenged regulations, our judgment is that they qualify as general statements of policy within subsection 553(b)(A). First, the agency's statutory discretion in these matters is extremely broad. The exercise of agency judgment is not dependent on a predicate of factual determinations that require information from outside the agency's area of expertise. Second, the challenged provisions have the quality of filling in the details of one aspect of a comprehensive regulatory framework;

---

**28.** *See Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974). In *Pickus*, regulations prescribing weighted criteria to be utilized in parole determinations were held not to constitute "general statements of policy" even though they expressly provided that the administrators were free to consider factors other than those specified, or to disregard the parole determination that would result from application of the published criteria. 38 Fed.Reg. 26652, 31942 (1973). The court found that in their structure and operation these regulations prescribed "a fairly tight framework to circumscribe the [Parole] Board's statutorily broad power." 165 U.S.App.D.C. at 377, 507 F.2d at 1113. The rules were intended to "largely replace prior rules regarding the criteria for parole selection," *id.* at 376, 507 F.2d at 1111, and "were of a kind calculated to have a substantial effect on ultimate parole decisions," *id.* at 377, 507 F.2d at 1112–13.

**29.** Record at 45–46. (Peat, Marwick, Mitchell & Co. engagement letter, dated July 23, 1975; qualified acceptance, dated December 3, 1975).

**30.** Record at 47–48 (letter of J. L. Leid, Jr., Assistant District Director, dated December 24, 1975).

**31.** Record at 49 (letter of J. L. Leid, Jr., Assistant District Director, dated June 18, 1976).

**32.** *See, e. g.,* 5 U.S.C. § 551(4) (definition of "rule"), *supra* note 9.

**33.** Regulation 571.2 contains a waiver provision that allows an insured institution to be exempted from the policy requiring audit by a public accountant. 12 C.F.R. § 571.2(e) (1978). In general, a discretionary waiver provision is not sufficient to qualify an otherwise nondiscretionary regulation as a "general statement of policy," for as we have noted in another context: "An applicant for waiver faces a high hurdle even at the starting gate." *WAIT Radio v. FCC*, 135 U.S.App.D.C. 317, 321, 418 F.2d 1153, 1157 (1969). A waiver provision is no substitute for the exercise of informed discretion in the various cases arising under the regulation. *See Texaco, Inc. v. FPC*, 412 F.2d 740, 744 (3d Cir. 1969).

compulsory notice and comment procedures for all such matters would have the potential to mire the agency in fruitless delay, expense, and inefficiency. Further, the standards outlined by these regulations are not unfamiliar, but are in large part reiterative of guidelines promulgated for the accounting profession by the American Institute of Certified Public Accountants.[34] The rules are not without some substantive impact, as appellant points out, but that alone does not undercut the conclusion that, in essence, they are general statements of policy.[35]

While it is our judgment that the exception for general statements of policy is applicable, the case is not wholly free from doubt. If the agency were to decide, in light of experience, that it wished to proclaim these rules as binding instructions, notice and comment would be appropriate. If the same result were reached without formality, but in the course of administrative application, so that the agency has prohibited latitude to deviate, the interests affected would at least have the opportunity to invoke subsection 553(e) of the APA to petition for a modification, an opportunity in effect to assure some agency consideration of comments. Even an agency rule adopted after notice and comment is subject to some opportunity for reconsideration.[36] When there has been no procedure for comment in the first instance, a petition to modify may serve an appropriate objective. On the other hand, this is definitely not to be construed as an invitation or authority to an institution to file a petition every time it feels aggrieved by some policy or instruction. Otherwise institutions might file grievances every time they are

treated either differently from other institutions (a claim of discrimination) or in the same way as other institutions (a claim that there is a binding instruction).

The FSLIC must, as a practical matter, develop standard instructions and approaches. The institutions being supervised often have similar, if not identical, problems. The only difficulty that arises is a procedural problem when an agency proceeds, as here, without notice and comment and argues that all that is involved is a general statement of policy. It is to preserve that exception that emphasis is put on the discretion to deviate from the general policy in extraordinary cases.

There is, at the end, a concern that this case makes a mountain out of a molehill, that all that is involved is some straightforward supervision of financial institutions, which is certainly necessary, and that actual examinations necessarily involve both general instructions to and individual discretion by examiners. Appellant's resistance to the "burden" of making payment for examinations by independent auditors does not merit such lengthy consideration. On the other hand, courts and agencies alike are controlled by the legislation pertaining to procedures.

The fact that even this case, which at first blush seems to relate purely to a matter of mechanics, is identified as one that is not free from difficulty, and calls for judgment, leads us to advert to the observation of Congress: "None of these exceptions . . . is to be taken as encouraging agencies not to adopt voluntary public rule making procedures where useful to the agency or beneficial to the public."[37] Our

**34.** The matter is fairly put in Appellees' Brief at 7–8: Bulletin PA–7a "sets forth minimally acceptable criteria for a satisfactory supervisory audit, with frequent reference to the auditing standards contained in *Audits of Savings and Loan Associations* (1973) prepared by the Committee on Savings and Loan Accounting and Auditing of the AICPA."

**35.** There is an indication in section 553 that interpretative rules may also be "substantive." Subsection 553(d) carves out an exception in the case of interpretative rules from the re-

quirement that substantive rules be published at least 30 days prior to their effective date.

**36.** *See Investment Co. Institute v. Fed. Reserve Board*, 179 U.S.App.D.C. 311, 322, 551 F.2d 1270, 1281 (1977).

**37.** Report of the Senate Judiciary Committee on the Administrative Procedure Act, S.Rep. No. 752, 79th Cong., 1st Sess. 13 (1945), *reprinted in* S.Doc. No. 248, *supra* note 20, at 199; *accord*, H.R.Rep. No. 1980, 79th Cong., 2d

own court, not bound by APA requirements, has adopted notice and comment practice even for its own procedural rules.[38] This course was recommended by a reflective commission composed of members appointed by the President, the Chief Justice, and Congressional leaders.[39] There is increasing recognition that opportunity for outside comment does enhance perspective, and has benefits that typically outweigh modest impediments to administration. An agency would acquire the additional advantage of avoiding both litigation and the risk of upset by a court taking a different view of the requirement for notice and comment.

*Affirmed.*

Sess. 23 (1946), *reprinted in* S.Doc. No. 248 at 258.

**38.** U.S. Court of Appeals for the D.C. Circuit, General Rules (Supplementing the Federal Rules of Appellate Procedure), Rule 22 ("Notice and Opportunity for Comment on Proposed Changes in These Rules"), Rule 23 ("Advisory Committee on Procedures") (1978).

**39.** Commission on Revision of the Federal Court Appellate System, *Structure and Internal Procedures: Recommendations for Change* 44–46 (1975).