The REGULAR COMMON CARRIER CONFERENCE OF the AMERICAN TRUCKING ASSOCIATIONS, INC., et al., Petitioners,

v.

UNITED STATES of America and Interstate Commerce Commission, Respondents,

Contract Carrier Conference, Inc., Warren Transport, Inc., Heavy-Specialized Carriers Conference, Baywood Transport, Inc., et al., Leaseway Transportation Corporation, Intervenors.

No. 79–1249.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 12, 1980.

Decided June 30, 1980.

Robert C. Bamford, Washington, D. C., with whom Roland Rice, Harry J. Jordan, and Leonard A. Jaskiewicz, Washington, D. C., were on brief, for petitioners.

John P. Fonte, Atty., I. C. C., Washington, D. C., with whom Richard A. Allen, Gen. Counsel, I. C. C., and Robert Lewis Thompson, Atty., Dept. of Justice, Washington, D. C., were on brief for respondents. Mark L. Evans, Christine N. Kohl, Attys., I. C. C. and Robert B. Nicholson, Atty., Dept. of Justice, Washington, D. C., also entered appearances for respondents.

Paul F. Sullivan, Washington, D. C., was on brief for intervenor, Heavy-Specialized Carriers Conference.

Harry C. Ames, Jr., E. Stephen Heisley, Dwight L. Koerber, Jr., and Lester R. Gutman, Washington, D. C., were on brief for intervenor, Baywood Transport, Inc., et al. Norman T. Fowlkes, III, Washington, D. C., also entered an appearance for intervenor, Baywood Transport, Inc., et al.

Thomas A. Callaghan, Jr., and Rick A. Rude, Washington, D. C., entered an appearance for intervenor, Contract Carrier Conference, Inc.

Harry J. Jordan, Washington, D. C., also entered an appearance for intervenor, Warren Transport, Inc.

Edward F. Schiff and Daniel Joseph, Washington, D. C., entered appearances for intervenor, Leaseway Transportation Corp.

Before McGOWAN, TAMM and ROBB, Circuit Judges.

Opinion for the court filed by Circuit Judge McGOWAN.

McGOWAN, Circuit Judge:

This petition for review raises the recurring question of whether agency action purporting to be a "general policy statement" is not something more, and therefore violative of statutory procedural and substantive limitations. In this instance we find the challenge to be unavailing, and we deny the petition.

I

The Interstate Commerce Act defines a motor *contract* carrier as

a person, other than a motor common carrier, providing motor vehicle transportation for compensation under continuing agreements with *a person or a limited number of persons* —

(A) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or

(B) designed to meet the distinct needs of each such person.

49 U.S.C. § 10102(12) (emphasis added). A motor *common* carrier, on the other hand, is

a person holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both.

49 U.S.C. § 10102(11).

In 1962, the Interstate Commerce Commission warned in *Umthun Trucking Co. Ext.-Phosphatic Feed Supplements*, 91 M.C.C. 691, that

[t]hose contract carriers whose services do not possess . . . a high degree of specialization . . . are hereby put on notice that their attempts to expand their operations by offering service to more than six or eight separate shippers will be scrutinized with great care to insure that they are not thereby placing themselves in a position to serve more than the limited number of persons permitted them by . . . the act.

*Id.* at 697. Thus from *Umthun* arose the so-called "rule of eight," *viz.*, a contract carrier normally cannot serve more than eight shippers.

On August 30, 1978, the Commission announced in the *Federal Register* that "frequent rigid application of the 'rule of eight' requires the Commission to reaffirm, at this time, the correct principles to be applied in determining the 'limited number of persons' issue." 43 Fed.Reg. 38756. The Commission thus proposed to issue, and invited comments on, a "[p]olicy statement to eliminate the 'rule of eight' in determining contract carrier qualification." *Id.* .

On January 11, 1979, the Commission published such a policy statement, to be effective immediately. 44 Fed.Reg. 2470. The Commission prefaced its statement by again condemning mechanical applications of the rule of eight and by discussing some of the criteria of "a limited number." The Commission then noted that "common synonyms for 'limited' are 'confined', 'finite', and 'bounded'." *Id.* at 2471. A contract carrier, the Commission observed, typically contracts with shippers individually named in its permit or with a highly concentrated or specialized industry group, and, in either case,

> the contract carrier can serve only a finite number of shippers, and its ability to expand is bounded, in the one instance by the willingness of the Commission to grant it new authority, and in the other by the number of members of the industry for which it performs services . . .
> Thus, we think that logic and common word usage compel the finding that such a carrier is, in fact, serving a limited number of shippers.

*Id.*

Having set out this reasoning, the Commission announced its "statement of policy":

> In determining whether a motor carrier serves a limited number of persons and thus meets the definition of motor contract carrier found at 49 U.S.C. 10102(12), the Commission will apply the following standards:

> 1. No fixed numerical limit will be set on the number of contracting shippers which a contract carrier may serve.

> 2. Where a contract carrier performs exclusively one type of specialized service which, because of the degree of specialization involved, is usable only by a particular type of shipper or industry, it will be presumed to be serving only a limited number of persons.

> 3. Where a contract carrier serves exclusively firms which are affiliated with one another, it will be presumed to be serving only a limited number of persons.

> 4. Where a contract carrier assigns equipment to the exclusive use of each person served for periods of at least 30 days, it will be presumed to be serving a limited number of persons.

> 5. A contract carrier whose operations do not fall within the terms of Item 2, 3, or 4 above may, with the Commission's approval, increase the number of its customers and still be found to be serving a limited number of persons as long as its operations are not expanding so rapidly and in such a manner as to indicate that it is holding out its services to the public generally. In determining whether a contract carrier is actually holding out its services to the public generally, the Commission will consider the similarity in the services which the carrier performs, the similarity in the types of commodities transported, and the degree of specialization required by the nature of business of its present potential new customers.

*Id.* at 2472.

## II

Petitioners argue that the Commission violated the Administrative Procedure Act (APA) (1) by failing to describe fully the scope of the proposed statement when the Commission solicited public comments, 5 U.S.C. § 553(b)(3), and (2) by failing to publish the statement at least thirty days before its effective date, 5 U.S.C. § 553(d). Further, petitioners contend that, substantively, the statement improperly expands the Interstate Commerce Act's definition of

"motor contract carrier." 49 U.S.C. § 10102(12).

Both of the APA subsections on which petitioners rely exempt "general statements of policy" from their requirements. 5 U.S.C. § 553(b)(A); 5 U.S.C. § 553(d)(2). We hold that the Commission's pronouncement is such a statement, and that therefore it is procedurally satisfactory.[1]

Essentially, petitioners argue that the Commission's pronouncement establishes a binding norm, and thus does not, as a policy statement must, "leave[ ] the agency and its decision-makers free to exercise discretion." *American Bus Ass'n v. United States*, 627 F.2d 525, at 529 (D.C.Cir. 1980). The matter is not without difficulty, since we are once again confronted with an agency's baffling failure in issuing a policy statement to say plainly that the agency is only "announc[ing] the general policy which the Commission hopes to establish in subsequent proceedings," *Pacific Gas & Electric Co. v. FPC*, 506 F.2d 33, 41 (D.C.Cir. 1974), and that that announcement "leave[s] the administrator free to exercise his informed discretion," *Guardian Federal Savings & Loan Ass'n v. Federal Savings & Loan Insurance Corp.*, 589 F.2d 658, 666 (D.C.Cir. 1978). Such explanations would reassure those potentially affected that their rights or duties had not actually been determined and would diminish the likelihood that a reviewing court would have to set aside the pronouncement on procedural grounds.

Nevertheless, we are on balance persuaded that the Commission has not promulgated a "binding norm." "Often the agency's own characterization of a particular order provides some indication of the nature of the announcement," *Pacific Gas*, 506 F.2d at 39, and here the Commission has repeatedly characterized the pronouncement as a policy statement. Furthermore, the statement of policy is introduced with

this sentence: "In determining whether a motor carrier serves a limited number of persons and thus meets the definition of motor contract carrier found at 49 U.S.C. § 10102(12), the Commission will apply the following standards." 44 Fed.Reg. 2472 (Jan. 11, 1979). We read this sentence as expressing the Commission's obligation to determine case by case whether an applicant for a contract carrier permit fits the statutory definition and as identifying criteria to guide that determination. We also note that the pronouncement speaks of presumptions, and, except in a few unusual cases, presumptions are by their nature tentative and rebuttable. Finally, taking the pronouncement as a whole, we find that it discusses at some length several considerations of "relevance in making the determination of what constitutes a limited number," *id.* at 2471, and that its very *raison d'être* was to restore to the Commission that discretion it lost when the "rule of eight" came to be mechanically applied. We thus hold that the Commission's pronouncement was a policy statement and that the Commission's procedures were therefore consonant with sections 553(b)(3) and 553(d) of the APA.

### III

In a leading case on the subject, we said of the general statement of policy:

It is not finally determinative of the issues or rights to which it is addressed. The agency cannot apply or rely upon a general statement of policy as law because a general statement of policy only announces what the agency seeks to establish as policy. . . . When the agency applies the policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued. An agency cannot escape its responsibility to present evidence and reasoning supporting its substantive rules by announcing binding

---

1. We note that, although a general statement of policy need not be preceded by notice and an opportunity for public comment, 5 U.S.C. § 553(b)(A), the Commission employed that technique. This sensible decision is wholly in keeping with the precepts and purposes of the APA. *See* S.Doc. No. 248, 79th Cong., 2d Sess. 199 (1946); *Guardian Fed. Sav. & Loan Ass'n v. Federal Sav. & Loan Ins. Corp.*, 589 F.2d 658, 668–69 (D.C.Cir.1978).

precedent in the form of a general statement of policy.

*Pacific Gas*, 506 F.2d at 38–39 (footnote omitted). Because a policy statement is tentative and not "finally determinative of the issues or rights to which it is addressed," it will often present no "firm and significant determination by the Commission . . . which can meaningfully be considered by us without awaiting its application to the facts of a particular case." *National Motor Freight Traffic Ass'n, Inc. v. United States*, 268 F.Supp. 90, 93 (D.C.D.C.1967) (three-judge court). *See Pacific Gas*, 506 F.2d at 45 & n.32. This is not to deny that a policy statement may sometimes be reviewable on its face. But, as we said of a challenge to another Commission policy statement,

> [t]o the extent that petitioners are arguing that the Commission is likely to abuse or misapply the new standards so as to deny intervention to persons with a right to intervene, the issue is not ripe for judicial review. *See Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, [87 S.Ct. 1520, 18 L.Ed.2d 697] (1967). If any person is wrongfully denied permission to intervene, he has the right to appeal within the agency and then to the Court of Appeals. Such an individual case is not now before this court.

*American Trucking Associations, Inc. v. United States*, 627 F.2d 1313, at 1318, (D.C.Cir. 1980) (footnote omitted). Here petitioners' argument is exactly that "the Commission is likely to abuse or misapply the new standards" so as to grant a permit to persons with no right to it, and we

therefore conclude that, substantively, the policy statement is not ripe for judicial review.[2]

■ We emphasize that, although we do not set aside the Commission's pronouncement, neither do we place our imprimatur on certain ambiguous—and perhaps legally unsound—comments in it. The Act states that contract carriers serve "a limited number of shippers." The Commission, however, intimates that when the statute says "limited," it means "finite." Nevertheless, a general statement of policy only "announces the agency's tentative intentions for the future," *Pacific Gas*, 506 F.2d at 38 (emphasis added), and only subsequent adjudications will reveal whether, as petitioners fear, the Commission is attempting to evade the statutory requirement that contract carriers serve only a "limited number" of shippers. If such an attempt is revealed, it will then be proper for a court to act.

## IV

Since the Commission's procedures were consonant with the requirements of the Administrative Procedure Act, we decline to set aside the Commission's statement on procedural grounds. And since the substantive aspects of the Commission's statement are unripe for judicial review, we do not reach petitioners' substantive arguments. Therefore, the petition for review is denied.

*It is so ordered.*

---

2. Our decision in *National Ass'n of Ins. Agents, Inc. v. Board of Governors*, 489 F.2d 1268, 1271 (D.C.Cir.1974), is entirely apposite:

> [In] light of petitioner's ability to oppose, in the hearings required to be held before any bank holding company can be permitted to engage in insurance activities, particular applications of the 1971 regulation with the gloss of the 1972 rule, and the clear contemplation of the Act that Board adjudication based upon an adversary hearing record is the only available avenue to such permission, only the strongest showing of the immediate and inescapable effect of the mere announcement of the Board's interpretation of its duly promulgated regulation would suffice to ad-

vance review to the abstract stage at which it is now being sought. Obviously petitioner would find it more convenient to make its objection generally rather than in the context of each particular application proceeding. But that in no way distinguishes the challenged regulation from other clearly interpretative, unreviewable regulations such as those issued routinely by the Internal Revenue Service.

> This petition for review, thus, seems premature at best. Petitioner does not deny that it can oppose before the Board and seek court review of particular application approvals, should there be any, with which it disagrees.