**TELECOMMUNICATIONS RESEARCH AND ACTION CENTER, Petitioner,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION and the United States of America, Respondents, American Legal Foundation, Intervenor.**

No. 85–1454.

United States Court of Appeals, District of Columbia Circuit.

Argued May 28, 1986.

Decided Sept. 5, 1986.

Philip K. Howard with whom Andrew Jay Schwartzman and David W. Danner were on brief, for petitioner.

Gregory M. Christopher, Counsel, F.C.C., for respondents. Jack D. Smith, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, C. Grey Pash, Jr., Counsel, F.C.C., John J. Powers, III and Marion L. Jetton, Attys., Dept. of Justice, were on brief, for respondents.

Michael P. McDonald was on brief for intervenor, American Legal Foundation.

Before WALD, Chief Judge, ROBINSON, Circuit Judge, and RE *, Chief Judge of the United States Court of International Trade.

RE, Chief Judge:

On this petition for review, petitioner, Telecommunications Research and Action Center (TRAC), challenges an order of the Federal Communications Commission (FCC) which eliminated six broadcast regulatory policies. Petitioner contends that the FCC's order should be reversed because (1) it abandoned the FCC's congressional mandate to serve the public interest when the order eliminated the broadcast policies, and (2) because it was promulgated without compliance with the notice and comment procedures of the Administrative Procedure Act (APA) § 4(a), 5 U.S.C. § 553(b) (1982).

Defendant responds that the "Policy Statement and Order" was exempt from the general rulemaking requirements of the APA because it is a general statement of policy within the meaning of section 4(b)(A) of the APA, 5 U.S.C. § 553(b)(A). Defendant also contends that elimination of

* Sitting by designation pursuant to Title 28 U.S.C.  § 293(a).

the broadcast policies was well within the FCC's authority, and was the result of reasoned decisionmaking.

The questions presented on this petition for review are whether the FCC's policy statement is the result of reasoned analysis, and whether it should have been adopted after notice and comment procedures. Since the Court holds that the FCC's policy statement was a reasonable exercise of the FCC's discretion to implement the public interest standard, and was exempt from the notice and comment provisions of the APA, the Court affirms the action taken by the Commission.

On January 18, 1985, the FCC adopted a "Policy Statement and Order" that eliminated six policies which the agency found to be no longer warranted or necessary. *See In re Elimination of Unnecessary Broadcast Regulation*, 57 Rad. Reg.2d (P & F) 913, *reconsideration denied*, 58 Rad. Reg.2d (P & F) 864 (1985). The order deleted policy statements pertaining to licensee distortion of audience ratings, conflicts of interest and sports announcer selections, promotions of nonbroadcast business of a station and use of a station for personal advantage in other business activities, concert promotion announcements, nonperformance of sales contracts, and false, misleading, and deceptive commercials. *See* 57 Rad. Reg.2d at 914.

The FCC was established for the purpose of regulating communication by wire and radio "so as to make available ... to all the people of the United States a rapid, efficient, Nationwide and world-wide, wire and radio communications service ..." Communications Act of 1934 § 1, et seq., 47 U.S.C. § 151 et seq. (1982); *see NAACP v. FCC,* 682 F.2d 993, 999 (D.C. Cir.1982). In the words of Justice Frankfurter, in his oft-quoted description of the FCC's broad regulatory purpose: "The touchstone provided by Congress was the 'public interest, convenience, or necessity,' a criterion which 'is as concrete as the complicated factors for judgment in such a field of delegated authority permit.'" *National Broadcasting Co. v. United States*, 319 U.S. 190, 216, 63 S.Ct. 997, 1009, 87 L.Ed. 1344 (1943) (quoting *FCC v. Pottsville Broadcasting*

*Co.*, 309 U.S. 134, 138, 60 S.Ct. 437, 439, 84 L.Ed. 656 (1940)); *see also FCC v. WNCN Listeners Guild,* 450 U.S. 582, 586, 101 S.Ct. 1266, 1269, 67 L.Ed.2d 521 (1981). To carry out its broad statutory mandate, the FCC developed the policies at issue in this case by means of public notices or individual agency adjudications. None were the result of rulemaking pursuant to the notice and comment provisions of the APA.

By means of the January 18, 1985 "Policy Statement and Order," the FCC eliminated these broadcast policies as part of its continuing effort to delete what it has termed "regulatory underbrush." The agency has described this regulatory underbrush as the "accumulation of Commission policies, doctrines, declaratory rulings, rules, informal rulings and interpretative statements that have grown up over the years." *See* 57 Rad. Reg.2d at 913. In addition, the FCC has determined that these underbrush policies "relate to areas which often are not within [the] Commission's area of expertise and where either alternate remedies exist to deter the activity addressed by the particular policy or where marketplace forces will correct the particular abuse." *Id.*

On March 7, 1985, TRAC petitioned for reconsideration of the FCC's order. On May 17, 1985, the FCC denied TRAC's petition for reconsideration. 58 Rad. Reg.2d 864, 866 (1985). The Commission explained that since general statements of policy, not substantive rules, were involved, the APA did not require notice and comment before their elimination. The Commission also rejected TRAC's contention that it had ignored the requirement that broadcast licensees be held to "trusteeship obligations," because the elimination of the policies was in accord with its decision "to place greater reliance on licensee discretion and competitive marketplace forces." *See id.* at 865 (citing *FCC v. WNCN Listeners Guild,* 450 U.S. 582, 101 S.Ct. 1266, 67 L.Ed.2d 521 (1981); *Office of Communication of the United Church of Christ v. FCC,* 707 F.2d 1413 (D.C.Cir.1983)).

The FCC also identified alternative remedies for the eliminated policies. In many

instances, the eliminated policies merely duplicated a more general FCC prohibition against the broadcasting of false, misleading, or deceptive material. It stated that "[i]n addition to private remedial measures—which involve private antitrust actions—the *Policy Statement and Order* consistently refers to alternative remedies such as other FCC policies ... and the basic antitrust laws and the agencies primarily responsible for their enforcement— the FTC and the Department of Justice." 58 Rad. Reg.2d at 865.

Thereafter, pursuant to section 402(a) of the Communications Act of 1934, 47 U.S.C. § 402(a) (1982) and 28 U.S.C. § 2342, TRAC petitioned this Court for review of the FCC's "Policy Statement and Order."

### REVIEW OF THE FCC'S POLICY STATEMENT

When an agency undertakes to change or depart from existing policies, it must set forth and articulate a reasoned explanation for its departure from prior norms. Hence, on review, a court may "understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate." *Atchinson, Topeka & Santa Fe Ry. v. Wichita Board of Trade*, 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973); *see also NAACP v. FCC*, 682 F.2d 993, 998 (D.C.Cir.1982).

In *Greater Boston Television Corp. v. FCC*, 444 F.2d 841 (D.C.Cir.1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971), this court explained the role and function of a reviewing court:

The function of the court is to assure that the agency has given reasoned consideration to all the material facts and issues....

....

Judicial vigilance to enforce the Rule of Law in the administrative process is particularly called upon where ... the area under consideration is one wherein the Commission's policies are in flux. An agency's view of what is in the public interest may change.... But an agency changing its course must supply a rea-soned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored ...

*Id.* at 851, 852 (footnotes omitted); *see Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 57, 103 S.Ct. 2856, 2873–74, 77 L.Ed.2d 443 (1983).

As part of its ongoing review of broadcast regulations, the FCC decided to eliminate as unnecessary certain broadcast policies. Each of the policies related in some way to the business practices of broadcast stations. At the outset, the Commission noted that the action addressed by these policies "may be considered as reflecting on the 'character' of a licensee." The Commission explained, however, that its treatment of licensee conduct in relicensing proceedings would be addressed in a separate proceeding. After the FCC issued its decision eliminating the six policies concerning business practices, the FCC completed its inquiry into the appropriate treatment of character qualifications in broadcast licensing. *See In re Policy Regarding Character Qualifications in Broadcast Licensing*, 102 F.C.C.2d 1179 (1986). That FCC decision, of course, is not before the Court today.

The Commission also stated that "[F]or all the policies eliminated there are alternative remedies in either or both the law and the marketplace." In recent years, the Commission's decision to rely upon marketplace forces to control licensee business practices has been consistently upheld when the Commission has provided a rational explanation for its conclusion that those forces are the best method of promoting the public interest. *See, e.g., FCC v. WNCN Listeners Guild*, 450 U.S. 582, 595, 101 S.Ct. 1266, 1274, 67 L.Ed.2d 521 (1981); *Office of Communication of United Church of Christ v. FCC*, 707 F.2d 1413, 1443 (D.C.Cir.1983). It has also been "repeatedly emphasized that the Commission's judgment regarding how the public interest is best served is entitled to substantial judicial deference." *FCC v. WNCN Listeners Guild*, 450 U.S. at 596, 101 S.Ct. at 1275.

In this case, the Commission has determined that the public interest would best be served by the elimination of the six policies in question. The Commission's Policy Statement sets forth detailed reasons for the deletion or elimination of each of the policies. For example, the FCC deleted its ratings distortion policy because it concluded that "other corrective forces are available to ensure that false ratings will not be relied upon." 57 Rad. Reg.2d at 916. These corrective forces include ratings services, advertisers, and competing stations, as well as the possibility that an injured party would file a complaint with the Federal Trade Commission (FTC) or institute private civil litigation.

Similarly, the Commission explained that "strong marketplace forces" exist that make its conflict of interest policy unnecessary. In addition to marketplace forces, conflicts of interest violations are controlled by sections 317 and 508 of the Communication Act of 1934, 47 U.S.C. §§ 317, 508 (1982), and, therefore, the eliminated policy was both unnecessary and redundant.

The interrelated policies relating to promotion of nonbroadcast business of a station, use of a station for personal advantage, and concert promotion announcements, were also deleted. The Commission indicated that other agencies, such as the Federal Trade Commission, have primary enforcement responsibility in this area. Moreover, the Commission reasoned that "in situations where records or other program material or commercial matter are broadcast primarily for reasons of private gain ... listenership and station ratings would likely decline, as would advertising support."

The policy relating to false, misleading, and deceptive commercials was also deleted as redundant. The Commission explained that broadcasters were already required "to take all reasonable measure to eliminate any false, misleading, or deceptive matter." In addition, the FCC noted that "[c]ontinued protection of members of the public from deceptive advertising practices is available from" the FTC, federal fraud statutes, Better Business Bureaus, and individual licensee procedures.

Finally, the FCC determined that the nonperformance of sales contracts was "a strictly commercial matter which is best left to the function of private remedies and of the marketplace."

Pertinent case law teaches that the FCC may rely upon marketplace forces to control broadcast abuse if the Commission reasonably finds that a market approach offers the best means of controlling the abuse. *See FCC v. WNCN Listeners Guild*, 450 U.S. 582, 595, 101 S.Ct. 1266, 1274, 67 L.Ed.2d 521 (1981); *Office of Communication of the United Church of Christ v. FCC*, 707 F.2d 1413 (D.C.Cir.1983). In the instant case, the FCC's analysis of the effect of marketplace forces and alternate remedies on the broadcast policies provides a "rational explanation for its policy founded on a predictive judgment well within its authority." *See Malrite T.V. of New York v. FCC*, 652 F.2d 1140, 1149 (2d Cir.1981), *cert. denied sub nom.* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982); *see also FCC v. WNCN Listeners Guild*, 450 U.S. at 595, 608, 101 S.Ct. at 1274, 1281, (predictions within Commission's "institutional competence"). As stated by the Supreme Court:

> If time and changing circumstances reveal that the "public interest" is not served by application of the Regulations, it must be assumed that the Commission will act in accordance with its statutory obligations.

*National Broadcasting Co. v. United States*, 319 U.S. 190, 225, 63 S.Ct. 997, 1013, 87 L.Ed.2d 1344 (1943).

In view of the foregoing, the court concludes that the FCC has provided a rational explanation for its conclusion that elimination of the six policies at issue here would be in the public interest. The record in this case provides substantial evidence to support the FCC's conclusion that the concerns underlying these six policies are either addressed by more general FCC rules, or can be better addressed by market forces or other agencies with greater expertise in regulating business practices.

## EXEMPTION FROM NOTICE AND COMMENT

■ Before an agency may adopt a substantive rule, it must publish a notice of the proposed rule and provide interested persons an opportunity to comment. *See* Administrative Procedure Act (APA) § 4, 5 U.S.C. § 553 (1982). The APA, however, does not require notice and public comment procedures for "general statements of policy." In *Pacific Gas & Electric Co. v. FPC,* 506 F.2d 33 (D.C. Cir.1974), this Court defined the term "general statement of policy" as follows:

A general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications. A general statement of policy, like a press release, presages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications.

. . . .

A general statement of policy ... does not establish a "binding norm." It is not finally determinative of the issues or rights to which it is addressed. The agency cannot apply or rely upon a general statement of policy as law because a general statement of policy only announces what the agency seeks to establish as policy.

506 F.2d at 38; *see also Batterton v. Marshall,* 648 F.2d 694, 706 (D.C. Cir.1980). Hence, "[a] general statement of policy that has not been issued under section 553 as a binding rule must leave the administrator free to exercise his informed discretion in the situations that arise." *Guardian Federal Savings & Loan Ass'n v. Federal Savings & Loan Insurance Co.,* 589 F.2d 658, 666 (D.C. Cir.1978).

■ It is well established that a court, in determining whether notice and comment procedures apply to an agency action, will consider the agency's own characterization of the particular action. *See, e.g., Brock v. Cathedral Bluffs Shale Oil Co.,* 796 F.2d 533, 537 (D.C. Cir.1986); *Pacific Gas & Electric Co. v. FPC,* 506 F.2d at 38. It is significant to note that the Commission, in its Memorandum Opinion on petitioner's request for reconsideration, conceded that "to the extent our *Policy Statement* articulates new policies, we recognize that it does not have the effect of a 'binding norm' or rule but is subject to well-established legal constraints applicable to policy statements." 58 Rad. Reg.2d at 865 n. 3; *see Pacific Gas & Electric Co. v. FPC,* 506 F.2d at 38. Moreover, the Commission has acknowledged that "should a licensee's actions in the areas eliminated by this *Policy Statement and Order* result in judicial or [agency] finding of a violation of law, we will continue to consider such findings." 57 Rad. Reg.2d at 916. Beyond vague and conclusory assertions, petitioner has offered no reason to question the Commission's characterization of its policy statement.

It may be noted that the policies eliminated by the FCC were not established by rulemaking; rather, they were announced in individual Commission proceedings or issued as public notices. Finally, as has been observed, "[t]he real dividing line between regulations and general statements of policy is publication in the Code of Federal Regulations." *Cathedral Bluffs,* 796 F.2d at 539. The six underbrush policies at issue here were included in a *list* of the FCC's policies, *see generally* 47 C.F.R. §§ 73.4000–.4280 (1985) (listing policies currently in force), but the policies themselves were not codified. The Commission maintains the list "solely for the purpose of reference and convenience." *Id.* § 73.4000. In our view, this disclaimer is evidence of the Commission's careful attempt to distinguish its general policies from its binding regulations. *Cf. Cathedral Bluffs,* 796 F.2d at 538–39.

In view of the relevant case law, the FCC's assertion that the Policy Statement does not constitute a binding norm, and our reading of the Statement, the Court concludes that the "Policy Statement and Order" is a general statement of policy, ex-

empt from the APA's general rulemaking requirements.

Accordingly, it is the holding of the Court that the FCC has adequately explained and articulated permissible reasons for its change in policy, and that the policy statement was exempt from the notice and comment provisions of the APA. Therefore, the petition for review is

Denied.