Evelyn E. **KIRKHUFF**, Plaintiff,

v.

Max **CLELAND**, Administrator of Veterans Affairs, Defendant.

Civ. A. No. 79–2310.

United States District Court, District of Columbia.

May 8, 1981.

Robert Morgan, Covington & Burling, Washington, D. C., Jim Lawing, Wichita, Kan., Isabelle Katz Pinzler, American Civil Liberties Union Foundation, New York City, for plaintiff.

Kenneth M. Raisler, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

On August 30, 1979, plaintiff Evelyn E. Kirkhuff commenced this action for declaratory and injunctive relief. Plaintiff challenges the validity under the Fifth Amendment to the Constitution and 38 U.S.C. §§ 210, 601, and 610 of a Veterans' Administration regulation barring otherwise eligible women veterans from eligibility for hospital care benefits for "uncomplicated" childbirth.[1] Defendant Max Cleland, then Administrator of Veterans Affairs, moved for dismissal on the grounds that 38 U.S.C. § 211(a) deprives this court of jurisdiction over plaintiff's claims. The parties, pursuant to agreement, have filed cross-motions for summary judgment, and oral arguments were heard on January 13, 1981.

The Court has carefully reviewed the pleadings and exhibits filed in this action, as well as the supplemental memoranda filed in support of and in response to the cross-motions for summary judgment, and finds that the absence of any genuine issue of material fact makes this action ripe for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies defendant's motion to dismiss or, alternatively, for summary judgment, and grants summary judgment in favor of plaintiff.

## BACKGROUND

Evelyn E. Kirkhuff, plaintiff in this action, is an honorably discharged veteran of the Navy who served during 1967–1970. In June 1975, plaintiff and her husband, also an honorably discharged Navy veteran, were enrolled as full-time college students. Plaintiff learned in June 1975 that she was pregnant, and contacted the Veterans' Administration ("VA") to determine her eligibility for medical and hospitalization benefits available to veterans unable to defray the costs of such services. The local VA office informed plaintiff that free medical and hospital care was available to indigent women veterans, but that such benefits would be authorized only where pregnancy and childbirth were complicated by pathological conditions.

On December 12, 1975, plaintiff submitted a formal application for medical benefits (VA Form 10–10), which included a medical report by her non-VA physician and her oath that she was unable to defray necessary costs. Plaintiff's formal application was disapproved on December 14, 1975, by the chief of the Medical Administration, Wichita, Kansas, VA Center, after his review and determination that no pathological conditions were manifest. As a result of the VA's determination of ineligibility, plaintiff and her husband found it necessary to turn to VA loans as a means of covering plaintiff's medical and hospitalization costs.

Plaintiff gave birth on January 16, 1976, following a pregnancy unmarked by any incidence of complicating medical conditions. The birth process and plaintiff's recovery from it were also medically uneventful. On February 3, 1976, following the birth of her child, plaintiff filed a Notice of Disagreement appealing the denial of her of benefits. Plaintiff also requested the repeal or revision of VA Reg. 6048(3) [cur-

1. In her complaint, plaintiff also sought to enjoin defendant from excluding otherwise eligible women veterans from eligibility for prenatal outpatient benefits under 38 U.S.C. § 612, where pregnancy was determined to be "uncomplicated". Plaintiff has abandoned this claim and the Court has not considered it.

rently codified at 38 C.F.R. § 17.48(e)], the regulation upon which the denial had been based.

The Board of Veterans Appeals heard plaintiff's appeal of the denial of benefits on August 8, 1977. The Board ruled that 38 C.F.R. § 17.48(e) prohibited reimbursement of medical and hospital care costs for uncomplicated childbirth, and found that plaintiff had been properly denied benefits under that regulation. Plaintiff's request for repeal or amendment of 38 C.F.R. § 17.48(e) to allow provision of benefits in the case of "uncomplicated" pregnancies and parturition was directed to the Administrator, who denied her request on January 26, 1978.

Defendant concedes that plaintiff has pursued all available administrative remedies in a timely and proper manner and that all administrative remedies were exhausted prior to the commencement of this action. There is also no dispute that plaintiff is otherwise eligible for the free hospital care benefits authorized under 38 U.S.C. § 610(a)(1) and was denied those benefits by defendant solely on the basis of 38 C.F.R. § 17.48(e), which provides:

> Women veterans will not be entitled to hospital care for pregnancy and parturition unless it is complicated by a pathological condition.

The fact that 38 C.F.R. § 17.48(e) embodies a VA policy in effect since at least 1926 is, likewise, undisputed.

## DISCUSSION

I. *Exceptions to Non-Reviewability Under 38 U.S.C. § 211(a)*

Defendant seeks dismissal of this action on the basis that judicial review of plaintiff's claims is precluded by 38 U.S.C. § 211(a) (1976), which insulates from review all "decisions" of the Administrator on veterans' benefits claims. Plaintiff argues in opposition to dismissal that her claims do not present a challenge to a VA "decision" as contemplated under § 211(a) but, instead, present questions of statutory construction and constitutionality outside the scope of the no-review clause.

Judicial review of veterans' claims has been statutorily barred since 1933. Section 211(a), the current no-review clause, provides in pertinent part that

> ... decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans ... shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

In 1974, the Supreme Court engaged in a comprehensive review of the legislative history of § 211(a) in reaching its decision in *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). The Court gave particular attention to the 1970 amendment of § 211(a), in which Congress expressly overruled a line of cases construing § 211(a) as precluding review only of decisions of the VA denying initial applications for veterans' benefits. The 1970 amendment, the Court concluded, was effected only to maintain the vitality of the two primary purposes of the no-review clause:

(1) To insure that veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-consuming litigation, and

(2) To insure that the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions will be adequately and uniformly made.

*Johnson v. Robison, supra,* at 370, 94 S.Ct. at 1167.

The *Johnson* court found that in 1970 the Congress was concerned not only with the increase of litigation but with the prospect of judicial intrusion into the "day-to-day determinations and interpretation of Veterans' Administration policy." *Id.,* at 372, 94 S.Ct. at 1168. Noting that nothing in the legislative history of the 1970 amendment to § 211(a) or its predecessor statutes sug-

gested an intent by Congress to preclude judicial review of Constitutional claims, the court found that

> Such [constitutional] challenges obviously do not contravene the purposes of the no-review clause, for they cannot be expected to burden the courts by their volume, nor do they involve technical considerations of VA policy.

*Johnson, supra.* Further, the court found that the constitutionality of § 211(a) itself would be suspect if it were construed to preclude constitutional challenges to underlying VA statutes such as those presented in *Johnson.* *Id.,* at 373, 94 S.Ct. at 1169. Thus, the court held:

> [T]he provisions of [§ 211(a)] would appear to be aimed at review only of . . . decision(s) of law or fact "under" a statute . . . made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts.

*Id.,* at 367, 94 S.Ct. at 1166.

*Johnson* thus establishes that attacks on the constitutionality of underlying VA statutes were clearly beyond the reach of the no-review clause. Whether—and how far—the *Johnson* analysis extends beyond the reviewability of constitutional challenges to VA statutes has been a matter of some dispute. The scope of the *Johnson* exception to non-reviewability under § 211(a) has recently been considered by this circuit in *Carter v. Cleland,* 643 F.2d 1 (D.C.Cir.1980). On appeal, the court in *Carter, supra,* considered the reviewability under § 211(a) of a challenge to a VA regulation. The regulation at issue operated to exclude from death benefits eligibility a surviving spouse who had been separated from a veteran, where that separation evidenced an intent on the part of the surviving spouse to terminate the marriage. Although the court in *Carter* held ultimately that appellant's challenge was the very type of action Congress sought to insulate through § 211(a), the court did conclude that the barrier of § 211(a) was not impenetrable, even in the

instance of certain non-constitutional claims.

In *Carter,* the circuit court found that § 211(a) meets the "clear and convincing evidence" standard necessary to overcome a presumption of reviewability, as enunciated in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Despite this finding, the court noted the narrowing of the scope of § 211(a) by the *Johnson* court to exclude from preclusion constitutional challenges to underlying VA statutes. The circuit court considered, as well, the further narrowing of the scope of § 211(a) by courts extending the *Johnson* rationale to exclude from preclusion constitutional challenges to VA procedural policies. Courts extending *Johnson* to claims directed at the constitutionality of VA policies found that such claims did not necessitate review of fact-specific VA determinations, so that review would not contravene the dual purposes of § 211(a).[2]

In construing a no-review clause similar in effect to § 211(a), this circuit noted that a reading of *Johnson, supra,* to preclude reviewability of constitutional challenges to agency procedures would raise a question of unconstitutionality similar to that avoided by the *Johnson* court. *Ralpho v. Bell,* 186 U.S.App.D.C. 368, 381, 569 F.2d 607, 620 (D.C.Cir.1977). Thus, the court in *Ralpho v. Bell, supra,* "agreed that the import of *Johnson* extends beyond its specific facts and that its analysis is appropriate in determining whether a statute precludes judicial review of constitutional challenges to agency procedures." *Carter v. Cleland, supra,* at 5.

For guidance on the question of whether non-constitutional challenges to agency policies—particularly challenges to policies as *ultra vires*—are precluded under § 211(a), the *Carter* court turned to the Sixth Circuit's decision in *Wayne State University v. Cleland,* 590 F.2d 627 (6th Cir. 1978). In *Wayne State, supra,* the Sixth Circuit considered the reviewability of a challenge to the VA Administrator's statutory authority

---

2. *Devine v. Cleland,* 616 F.2d 1080 (9th Cir. 1980); *Moore v. Johnson,* 582 F.2d 1228 (9th Cir. 1978); *Plato v. Roudebush,* 397 F.Supp. 1295 (D.Md.1975).

to promulgate regulations defining "full-time" college-level study for the purposes of educational benefits eligibility. Although a finding for plaintiff on the merits was reversed on appeal, the circuit court upheld the finding that judicial review was not barred by § 211(a). In extending *Johnson* to challenges to regulations as *ultra vires,* the Sixth Circuit concluded that a reading of § 211(a) to bar determination of the limits of the Administrator's authority would raise the same spector of unconstitutionality the Supreme Court avoided so scrupulously in *Johnson.*

The Sixth Circuit also found:

Suits challenging the authority to promulgate regulations will not involve the federal courts in the day to day operations of the VA. Neither will our construction of § 211(a) [to permit review] spawn suits requesting federal courts to second guess the Administrator on the merits of particular claims for benefits of the termination of such benefits.

*Wayne State University v. Cleland,* 590 F.2d 627, 631 (1978). *Wayne State* thus finds an exception to non-reviewability under § 211(a) in addition to the exception enunciated by the *Johnson* court.

Adopting the *Wayne State* rationale, three other circuits have held to date that review of the limits of the Administrator's authority to promulgate regulations is excepted from the scope of § 211(a). *University of Maryland v. Cleland,* 621 F.2d 98 (4th Cir. 1980); *Merged Area X (Education) v. Cleland,* 604 F.2d 1075 (8th Cir. 1979); *Evergreen State College v. Cleland,* 621 F.2d 1002 (9th Cir. 1980). The court in *Evergreen State College, supra,* affirmed the lower court's finding that the promulgation of regulations by the Administrator was reviewable, notwithstanding § 211(a). The court found that although

... 38 U.S.C. § 211(a) was designed to prevent judicial review of decisions of the VA on individual claims ... it would not bar judicial review of constitutional challenges to provisions of the veterans' benefits legislation and regulations thereunder, and ... would not preclude judicial

review of challenges to the Administrator's authority.

*Id.,* at 1008.

While recognizing that the dual purposes of § 211(a) are not contravened by judicial "consideration of a single, non-factual and strictly legal, constitutional issue", the D.C. Circuit had never decided the question of whether constitutional challenges to VA policies are shielded from review. *Carter v. Cleland, supra.* The question of whether § 211(a) bars judicial review of the Administrator's authority to promulgate regulations also remains undecided. The appellants in *Carter,* the court found, had failed to support their due process claims with a *prima facie* showing that the challenged regulation created an irrebuttable presumption of ineligibility. In the absence of such a showing, appellants' constitutional claims amounted merely to a request for judicial review of the merits of the Administrator's decision.

Additionally, the court in *Carter* found the appellants' non-constitutional claim non-reviewable under § 211(a). The court concluded that appellants' non-constitutional claim amounted not to a challenge of a binding, "legislative" rule, but to a challenge of an interpretive, non-binding guideline. Since administrative discretion was not entirely precluded by the guideline, the court concluded that its review of appellants' claim would result in its becoming "inextricably involved in review of fact-specific questions that Congress left to the Administrator and shielded from judicial scrutiny" through § 211(a). *Carter, supra,* at 9. Judicial review of non-binding guidelines would not, the court found, involve "a one-time question of statutory interpretation regarding the scope of the Administrator's authority, as was the case in *Wayne State." Id.,* at 9. The court thus concluded that appellants' claims fell under neither of the "two possible exceptions to non-reviewability—for constitutional claims and for challenges to the Administrator's authority to promulgate regulations..." *Id.,* at 9.

### A. Reviewability of Plaintiff's Constitutional Claims

Plaintiff urges this court to read *Carter*, *supra*, as strongly supporting the reviewability of her constitutional claims. She argues that unlike the constitutional claims examined and found non-reviewable in *Carter* the constitutional claims presented here would not involve review of the basis for evidentiary "decisions" of the VA.

Plaintiff contends first that 38 C.F.R. § 17.48(e) violates her due process rights under the Fifth Amendment to the Constitution by creating an irrebuttable presumption that women veterans experiencing labor and delivery without complications are not "disabled" for the purposes of hospital care benefits eligibility under 38 U.S.C. § 601 *et seq.*

In *Carter*, the challenged rule was found to create a conclusive presumption of fault foreclosing eligibility at the initial determination level. The rule at issue was not, however, found to be binding upon the Board of Veterans Appeals. Since individuals exercising their statutory right of appeal would be afforded an opportunity to overcome a presumption resulting in ineligibility, that presumption would not be *uniformly* conclusive, and thus irrebuttable. The court found that in the absence of a showing of irrebuttability, appellants' due process claims in *Carter* amounted only to challenges to factual determinations by the Board of Veterans Appeals, the very type of agency decision-making foreclosed from review by § 211(a).

The question here, therefore, is whether 38 C.F.R. § 17.48(e) effectively creates an irrebuttable presumption which operates at all levels of agency decisionmaking to exclude from eligibility *all* women veterans experiencing "normal" childbirth. Defendant does not dispute that plaintiff's formal application for hospital care benefits was denied solely on the basis of 38 C.F.R. § 17.48(e), after the local VA Center had determined that plaintiff's pregnancy was uncomplicated. Neither does defendant dispute that the regulation is binding upon the Board of Veterans Appeals as well.[3]

Despite defendant's concession that § 17.-48(e) is binding upon the Board of Veterans Appeals, defendant argues that a veteran denied benefits solely on the basis of § 17.48(e) may later seek—and be awarded—those benefits in the event that complications do occur. Defendant argues, in essence, that since veterans experiencing "uncomplicated" pregnancy and parturition can overcome a presumption which forecloses eligibility by developing such complications, no irrebuttable presumption is created by § 17.48(e). This argument is, obviously, not responsive to the question of whether § 17.48(e) operates to foreclose eligibility—in all cases—to otherwise eligible veterans who cannot show the presence of "pathological complications".

Since the Appeals Board is bound by 38 C.F.R. § 17.48(e), and will not engage in any fact-finding where, as here, the absence of complications is uncontested, plaintiff's claim cannot be characterized fairly as one disputing sufficiency of evidence. Plaintiff's due process claim is thus distinguishable from the one considered in *Carter*, where the rule at issue was not binding upon the Appeals Board.

■ Plaintiff has thus made the requisite *prima facie* showing that § 17.48(e) will control all eligibility determinations at all levels of agency decisionmaking. Since

---

**3.** In their Findings and Decision issued August 8, 1977, the Board of Veterans Appeals explains its decision to uphold denial of benefits to plaintiff by noting that

> ... We cannot pass judgment on the merits of the arguments as to whether pregnancy is a disease or disability, whether the cited Veterans Administration regulation [§ 17.48(e)] exceeds statutory authority or is in violation of Congressional intent, or whether the regulation is unconstitutional. *These matters are*

> *outside the Board's province. We are bound by the regulation* which prohibits payment for medical services, including hospital care, for pregnancy and parturition not complicated by a pathological condition. (Emphasis supplied.)

The Board of Veterans Appeals cites 38 U.S.C. § 4004(c) (1976), which prescribes that the Board shall be bound by the rules and regulations promulgated by the Administrator.

there is no question that plaintiff is otherwise eligible for the benefits denied her, and that denial of those benefits was based solely upon § 17.48(e), plaintiff's due process claim can be found to amount to a substantive constitutional challenge to § 17.48(e), and as such is reviewable by this court.

Unlike her due process claim, plaintiff's equal protection claim cannot be found substantive. Plaintiff asserts that 38 C.F.R. § 17.48(e) violates the equal protection clause of the Fifth Amendment by discriminating against otherwise eligible veterans on the basis of sex. Plaintiff does not argue that § 17.48(e) serves as a pretext for gender-based discrimination on a system-wide scale, or that the aggregate medical benefits available to otherwise eligible veterans of both sexes reveals sex discrimination against women veterans. Rather, plaintiff argues that § 17.48(e) violates equal protection guarantees by placing an impermissible burden upon women veterans unable to demonstrate complications in their labor and deliveries.

■■■■ Plaintiff's equal protection claim is thus closely related to her due process claim that § 17.48(e) creates an irrebuttable presumption violative of Fifth Amendment due process guarantees. The burden complained of here is the necessity for a woman veteran to prove that her pregnancy is "pathologically complicated" in order to be eligible for hospitalization benefits. As the circuit court has noted, however, constitutional questions are not to be decided on a hypothetical basis. *Carter, supra,* at 5. Since plaintiff does not allege any attempt on her part to prove that her condition was complicated, plaintiff has not raised a substantive constitutional claim. The question of whether § 17.48(e) violates Fifth Amendment equal protection guarantees cannot, therefore, be reached in this action.

### B.  Reviewability of Plaintiff's Non-Constitutional Claim

Plaintiff argues that in light of the decision in *Carter,* this court has jurisdiction to review her claim that promulgation of 38 C.F.R. § 17.48(e) by the defendant was in excess of his statutory authority. Defendant asserts that § 17.48(e) must be found to be an "interpretive" guideline comparable in effect to the rule found unreviewable in *Carter.*

While noting that three other circuits had, to date, adopted the rationale of *Wayne State, supra,* to find such non-constitutional claims subject to judicial review,[4] the court in *Carter* found the *Wayne State* exception inapplicable. The conclusion of non-reviewability in *Carter* was based on the court's finding that the rule at issue merely acted as a guideline in the application of the statute to individual veterans' benefits claims. The rule did not, therefore, operate to narrowly limit or even preclude administrative discretion. *Carter v. Cleland, supra,* slip op. at 8.

In determining that the rule at issue in *Carter* was merely an administrative guideline, and not a binding regulation, the court examined not only the form and substance of the challenged rule but its practical effect as well. The court looked to its earlier decision in *Guardian Federal Savings & Loan Ass'n v. Federal Savings & Loan Insurance Corp.,* 191 U.S.App.D.C. 135, 589 F.2d 658 (D.C.Cir.1978), for guidance in determining whether the challenged rule was reviewable under the *Wayne State* exception. In *Guardian Federal, supra,* the court noted

> If it appears that a so-called policy statement is in purpose or likely effect one that narrowly limits administrative discretion, it will be taken for what it is—a binding rule of substantive law.

*Id.,* 589 F.2d at 667. Since the rule at issue in *Carter* was found to be "... not binding

---

4.  The court noted that in *Evergreen State College v. Cleland,* 467 F.Supp. 508 (W.D.Wash, 1979), reviewability of challenges to the Administrator's authority to regulate was found without reference to § 211(a). The 9th Circuit subsequently affirmed in part, upholding reviewability of such claims with specific reference to § 211(a). *Evergreen State College v. Cleland,* 621 F.2d 1002 (9th Cir. 1980).

on the Board of Veterans' Appeals and does not conclusively determine a spouse's eligibility for death benefits", the court found that § 211(a) precluded judicial review.

The regulation at issue in this action, 38 C.F.R. § 17.48(e), is clearly a substantive, binding regulation under the criteria applied in *Carter*. Although it is codified in the Code of Federal Regulations under the sub-heading "Considerations for Eligibility", § 17.48(e) concededly operates to preclude the exercise of administrative discretion at all levels of administrative decision-making, and is conclusive in determinations of eligibility for hospital care benefits.

The opportunity afforded to plaintiff to present medical testimony before the Appeals Board in support of her attack on the validity of the regulation can thus be viewed as merely a gesture of courtesy on the part of the Board, since the Board had no jurisdiction to consider that evidence. In light of the Board's admitted lack of authority to consider the legal questions raised by plaintiff at the agency level, judicial review beyond the record cannot be considered as amounting to an improper *de novo* evidentiary hearing, as defendant asserts. Defendant argues strenuously that in the event plaintiff's claims are found reviewable notwithstanding § 211(a), such review must be limited strictly to the administrative record.[5] Specifically, defendant seeks to exclude from judicial consideration two affidavits supporting plaintiff's motion for summary judgment, as well as a copy of an earlier version of the challenged rule, VA Reg. 6048(e).[6]

The danger of judicial interference with functions properly within the purview of an agency—which might properly limit review to the record—is clearly not present here, where the agency itself has conceded its own lack of jurisdiction over questions of law identical to those presented for judicial review. Defendant's reliance on two deci-

sions of this circuit concerning the scope of review is misplaced. In both *Polcover v. Secretary of the Treasury*, 155 U.S.App. D.C. 338, 477 F.2d 1223 (D.C.Cir.1973), cert. denied 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973), and in *Doe v. Hampton*, 184 U.S.App.D.C. 373, 566 F.2d 265 (D.C.Cir. 1977), the circuit court held that the scope of review was limited strictly to the record, where evidentiary bases for agency adjudicative actions were attacked as insufficient or otherwise erroneous.

*Polcover* and *Doe* can be distinguished from this action and cannot be found dispositive of the scope of review question presented here. Unlike the adversely affected employees of *Polcover* and *Doe*, plaintiff here was not affected by an adverse evidentiary determination of an agency made on the merits of her individual claim. No factual dispute existed at the agency level; plaintiff never asserted that her pregnancy or childbirth was anything but "normal". Additionally, plaintiff has never contested the applicability of § 17.-48(e) to a decision on her claim. It is thus difficult—if not impossible—to characterize the agency-level proceedings in this case as involving any fact-finding or any exercise of discretionary powers by agency officials. The only discretion exercised, and drawn into question, is that of the Administrator in promulgating § 17.48(e). A review of the facial validity of the rule and of the Administrator's authority to promulgate it involve, therefore, questions of constitutionality and congressional intent. Such questions have never been viewed as matters solely within the special competence of an agency. *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Hardin v. Kentucky Utilities*, 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968); *NLRB v. Hearst*, 332 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

---

5. Defendant seeks exclusion of the affidavit of Allan B. Weingold, M. D., and the affidavit of John J. Schruefer, M. D. Defendant has not, however, attacked the qualifications of either physician to testify, and both are presumably expert in the area of human reproduction.

6. In addition to the record compiled by the Board of Veterans Appeals, the administrative record in this action includes the Administrator's decision denying repeal or revision of § 17.48(e), dated January 26, 1978.

This Court is thus not limited to review solely on the administrative record developed by the VA in its consideration of the constitutionality of § 17.48(a), and of that rule's conformity with the intent of Congress underlying pertinent statutory provisions. The affidavits challenged by defendant as well as other materials useful to the court may thus be considered.[7] Since plaintiff's non-constitutional challenge does raise a "one-time question of statutory interpretation", plaintiff's non-constitutional claim can be found to fall under one of the "two possible exceptions" to § 211(a). *Carter, supra,* at 9. As such, plaintiff's claim is reviewable by this Court, and defendant's motion to dismiss for lack of jurisdiction must be denied.

## MERITS

I. *Scope of the Administrator's Statutory Authority*

The question presented is whether the Administrator acted within the scope of his authority in construing the statutory definition of "disability" to exclude uncomplicated parturition for the purposes of hospitalization benefits eligibility. It is undisputed that this construction of the statutory term is embodied in 38 C.F.R. § 17.48(e), which provides:

> Women veterans will not be entitled to hospital care for pregnancy and parturition unless it is complicated by a pathological condition.

Plaintiff argues that the promulgation of § 17.48(e) exceeds the bounds of the authority granted to the Administrator under 38 U.S.C. § 210(c)(1) (1976 ed., Supp. III), and must therefore be found invalid.

In determining the validity of § 17.48(e), the court must look to § 706 of the Administrative Procedure Act ("APA") as prescribing applicable standards of review. Section 706, APA provides:

> The reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action . . .

According to six enunciated standards 5 U.S.C. § 706 (1976 ed. Supp. III). There is no question that the agency action at issue in this case is, by definition, subject to review in accordance with the standards set forth under § 706, as they apply to informal rulemaking actions. As defined under 5 U.S.C. § 551(13), "agency action" encompasses final rulemaking action, as well as the final rule itself.

In determining which of the six separate standards under § 706 [8] are applicable to review of a challenge to the Administrator's authority to promulgate certain substantive regulations, the court in *Wayne State v. Cleland, supra,* looked for guidance to the Supreme Court's decision in *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The court in *Wayne State* found the analysis of *Overton Park, supra,* applicable; judicial review of the validity of a substantive regulation would involve the testing of the challenged regulation by three discrete standards. In conducting the requisite "thorough, probing, in-depth review,"[9] the Court must determine (1) whether the promulgation of the regulation was *ultra vires*; (2) whether the regulation is "arbitrary, capricious, or otherwise not in accordance with law"; and (3) whether necessary procedural requirements were observed in promulgat-

---

7. The court is cognizant, however, that judicial review of defendant's promulgation of § 17.48(e) under the "arbitrary and capricious" standard of 5 U.S.C. § 706(2)(A) is properly limited to the record. The court has not, in any event, found it necessary to consider the challenged affidavits in relation to any of the questions presented for review.

8. The six separate standards under § 706 are discrete standards, so that an agency action

may satisfy (or fail to satisfy) one standard but not another. *O–J Transport Co. v. United States,* 536 F.2d 126, 130 (6th Cir. 1976), *cert. denied,* 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328 (1976).

9. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

ing the regulations. *Wayne State, supra,* at 633.[10]

A substantial inquiry into the limits of the Administrator's statutory authority must be the first step in determining the validity of § 17.48(e). *Citizens to Preserve Overton Park v. Volpe, supra,* 401 U.S. at 415, 91 S.Ct. at 823. Congress has provided the Administrator with

> . . . authority to make all rules and regulations *which are necessary and appropriate* to carry out the laws administered by the Veterans' Administration *and are consistent therewith* . . .

38 U.S.C. § 210(c)(1) (1976 ed. Supp. III). (Emphasis supplied.) Under § 210(c)(1), the Administrator is thus empowered to adopt any regulation which he deems "appropriate" and "necessary" to the administration of veterans' benefits programs. The broad delegation of authority to the Administrator under § 210(c)(1) encompasses the express power to prescribe standards for benefits eligibility determinations, through the promulgation of regulations

> . . . with respect to the nature and extent of proofs and evidence and the method of taking and furnishing them in order to establish the right to benefits under [veterans' benefits] laws . . .

38 U.S.C. § 210(c)(1) (1976 ed. Supp. III).[11] The Administrator's authority to prescribe standards for determining "disability" for the purposes of hospitalization benefits eligibility will thus be limited only by the requirement that those standards be "consistent" with the provisions and underlying intent of applicable veterans' benefits statutes. Defendant argues that the promulgation of § 17.48(e) to exclude "uncomplicated" childbirth as a qualifying "disability" for hospital care benefits eligibility purposes is consistent with applicable statutory provisions and the intent of Congress, and is thus valid.

Under Chapter 17, Title 38 U.S.C., Congress has provided for the availability of certain medical, hospitalization, and domiciliary care benefits to veterans who were not dishonorably discharged, and who are experiencing a "disability". For the purposes of eligibility for such benefits, generally, Congress has defined "disability" to mean "a disease, injury, or other physical or mental defect." 38 U.S.C. § 601(1) (1976 ed. Supp. III). "Disability" is further defined within the statute as being either "service-connected" or "non-service connected". 38 U.S.C. § 610(a)(1) provides in part:

> The Administrator, within the limits of Veterans Administration facilities, may furnish hospital care . . . which the Administrator determines is needed to—
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (B) Any veteran for a non-service connected disability if such veteran is unable to defray the expenses of necessary hospital . . . care.

Section 610(a)(1)(B) thus affects significantly the broad grant of discretionary authority to the Administrator. Benefits available under § 610(a)(1)(B) may be granted only if the Administrator is able to determine that (1) the applicant is an indi-

---

**10.** Although the Supreme Court found expressly that the challenged action of the Secretary in *Overton Park* "was plainly not an exercise of a rulemaking function", 401 U.S. 402, 414, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), courts have generally found the three-prong test adopted by the court to be applicable to review of substantive administrative regulations. See, e. g., *Wayne State, supra,* at 632; *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977).

As discussed above, the nature of plaintiff's claims and type of agency action at issue here make § 706(2)(E) and (D) inapplicable, for review purposes. Plaintiff's constitutional claim would, however, be reviewable in accordance with § 706(2)(B). Promulgation procedures are not at issue here, and will not be discussed.

**11.** Under § 210(c)(1), any regulation issued pursuant to the authority granted by any provision of Title 38, U.S.C. must, when published, include citations to the particular section(s) of statutory law or other legal authority upon which the regulation is promulgated. In compliance with this requirement, the publication of 38 C.F.R. § 17.48(e) makes reference to § 210(c)(1) as the statutory authority for its issuance. This Court need not consider, therefore, whether the defendant would be authorized to promulgate § 17.48(e) pursuant to the authority of 38 U.S.C. § 621, as defendant asserts.

gent veteran, not dishonorably discharged; (2) the veteran's disability is non-service connected; (3) care can be provided within the limits of VA facilities; and (4) hospital care is needed. The most critical finding will be, obviously, that the veteran has a "disability". It is important to note, however, that "disability" for the purposes of eligibility under § 610 will include only those diseases, injuries, or physical or mental defects which the Administrator determines will necessitate hospitalization. An otherwise eligible veteran whose broken arm could be treated on an outpatient basis would thus be likely to be found ineligible for benefits under § 610(a)(1)(B).

Although the Administrator unquestionably retains a great degree of latitude in his determinations of eligibility under § 610, defendant has not asserted that plaintiff was denied benefits on any bases other than his determination that uncomplicated parturition can never constitute a "disability". The scope of defendant's discretionary powers to grant or deny hospital care benefits under § 610 on any basis other than the one actually relied upon is, therefore, irrelevant to the question presented here.

Since the plain language of the pertinent statutory provisions, as discussed above, clearly authorizes the Administrator to construe the statutory definition of "disability" in determining eligibility under § 610(a)(1)(B), the question then becomes whether the construction of that term as embodied in 38 C.F.R. § 17.48(e) is "consistent" with congressional intent. 38 U.S.C. § 210(c)(1) (1976 ed. Supp. III).

A. *Legislative History of § 17.48(e)*

Defendant argues that 38 C.F.R. § 17.-48(e) is consistent with an intent of Congress to disallow hospital care benefits for uncomplicated parturition on the basis that "normal" parturition is not contemplated under Chapter 17, Title 38 U.S.C. as a "disease, injury, or other physical or mental defect." A review of the legislative history of pertinent veterans' benefits legislation reveals no express exclusion of uncomplicat-

ed parturition from the definition of "disability". To the contrary, a review of relevant legislative history reveals an ample basis for a finding that Congress intended a broad reading of the term "disability"—a reading broad enough to encompass uncomplicated childbirth.

Congress first consolidated all laws providing veterans' benefits by enacting the World War Veterans Act of 1924. Pub.L. 68–242, 43 Stat. 607. The World War Veterans Act ("Act") authorized the provision of a broad range of free medical and hospitalization benefits to veterans with disabilities incurred, or aggravated, during active service. Additionally, the Act authorized free hospital care within existing government facilities to honorably discharged, indigent veterans "of any war, military occupation, or military expedition since 1897 ... without regard to the nature or origin of their disabilities..." Act, § 202(10) (1924). For the purposes of the Act of 1924, "disability" included "wounds", "injury" and "disease", as well as "neuropsychiatric ailments". Act, § 202(9), (10) (1924). Women were expressly contemplated as beneficiaries under the Act. *Id.*, § 3(9).

An expansion of available benefits for veterans, generally, and women veterans, specifically, was accomplished by amendment of the World War Veterans Act in 1926. Section 202(10), as amended by the Act of July 2, 1926,[12] expressly included indigent women veterans of the Army nurse corps as intended beneficiaries of free hospital care, "without regard to the nature or origin of their disabilities." The amended Act provided further that

> The director [of the Veterans' Bureau] is hereby authorized to hospitalize women veterans entitled to hospitalization under the provisions of this Act and amendments thereto, *in other than government hospitals.*

Act of June 7, 1924, as amended by Act of July 2, 1926, § 202(10), 44 Stat. 796 (1926).

The necessity for amending the 1924 Act to provide expressly for the provision of

---

**12.** 44 Stat. 796 (1926). ·

free hospital care to indigent women veterans was underscored in hearings held on H.R. 12175, enacted subsequently as the World War Veterans Act Amendments of 1926.[13] The Director of the then Veterans' Bureau, General Hines, noted that among the amendments to the 1924 Act recommended by the Bureau,

> [T]he first change is in section 10 ... which provides general hospitalization for all ex-service men of all wars and all disability where facilities are available and the veteran is in need of hospitalization. *The change contemplated provides that where the facilities of the government will not take care of women veterans entitled to hospitalization under this provision, that we be authorized to place them in contract [private] hospitals.*[14] (Emphasis added.)

The exchange between the Director and the Committee Chairman which followed these remarks on the proposed amendment to Section 202(10) demonstrates that as early as 1926, Congress contemplated that women veterans would have equal access to veterans' benefits:

> *Chairman*: Well, why this amendment? It seems to me that the original bill covers the whole question.
>
> *General Hines*: This amendment is necessary, in my judgment, to facilitate the hospitalization of women veterans and give them really equal privileges with those of the male veterans.
>
> *Chairman*: Well, but I mean, the original bill, it seems to me, would give you that power anyhow.[15]

The amendment as proposed by the Veterans' Bureau was subsequently enacted.

In reporting out an earlier bill amending the 1924 Act, which also contained express authority for hospitalization of women veterans in private facilities, the Committee on World War Veterans' legislation noted that

> The number of women entitled to and who require [hospitalization in private facilities] is so limited and the diseases with which they suffer so varied as to make it impracticable to maintain separate institutions... The Veterans' Bureau has established a few wards for women in certain of their hospitals. However, it is necessary in most instances for women to travel great distances to reach these few institutions, and many times the same are not equipped to handle the particular disease with which the woman is suffering.[16]

Congress was thus aware that VA facilities for women veterans were limited, and most often not equipped to deal with disabilities unique to women.

In the 55 years since Congress first considered the unique needs of women veterans, Congress has consistently reevaluated the changing needs of this country's veterans—both male and female. Congress has responded to those needs through the enactment of increasingly comprehensive benefits programs for veterans. It is significant to note that throughout the numerous amendments and enactments of Congress in the area of veterans' benefits legislation, Congress has consistently maintained provision for hospital care for women veterans as a distinct group of eligibles.

Confronting the enormous new demands placed on VA health care facilities as a result of the Vietnam War, Congress responded by tripling VA health care appropriations between 1969 and 1976.[17] In 1976, Congress took a hard look at the VA's capacity to provide quality care to the massive numbers of newly-eligible veterans of the Vietnam War and enacted the Veterans Omnibus Health Care Act.[18] Congress' primary concern in 1976 was ensuring that veterans with service-connected disabilities

---

13. Pub.L. 68–448, 44 Stat. 790 (1926).

14. Hearing on H.R. 12175 before the Senate Committee on Finance, 69th Cong., 1st Sess. 14 (1926).

15. *Supra*, at 14.

16. H.R.Rep.No.515, 69th Cong. 1st Sess. 2 (1926).

17. S.Rep.No.94–1206, Part I, 94th Cong., 2nd Sess. (1976), *reprinted* in 5 U.S.Code Cong. & Ad.News 6355, 6360 (1976).

18. Pub.L. 94–581, 90 Stat. 2842 (1976).

received top priority in the provision of in- and out-patient services. One amendment incorporated into the Omnibus Act aimed at conserving VA resources to that end was an amendment to the definition of "VA facilities" under 38 U.S.C. § 601(4). The amendment limited the provision of private hospital care to seven specific categories of veterans. Despite this express limitation, and the detailed specification within § 601(4) of the circumstances under which private care would be authorized, Congress maintained the category of "women veterans" as one of the seven eligible groups. 38 U.S.C. § 601(4)(C)(iv) (1976 ed., Supp. III). The Senate Committee report noted that

> The effect of this new language is to limit the authorization of fee-basis service—for service connected or non-service connected disabilities—to those situations when regular VA hospitals or clinics (or other federal facilities) *are genuinely unable to provide the needed services themselves.*[19] (Emphasis added.)

It is reasonable to infer that the retention of the category "women veterans" as a discrete group of eligible veterans reflected Congress' awareness that VA facilities were not generally equipped for women, and that the total number of women veterans was so small that their need for private ("fee-basis") hospital care would be comparatively negligible.[20] Although only a small percentage of veterans were women, Congress also enacted technical amendments contained in the Omnibus Act which eliminated all gender-specific language throughout Title 38, U.S.C.

The validity of the Administrator's construction of the term "disability" to exclude a condition which affects only women veterans must thus be tested against the demonstrated intent of Congress to provide women veterans with private hospital care

where VA facilities are not available or able to provide such care as is required.[21] Defendant argues, however, that the failure of Congress to repeal or revise the Administrator's construction of "disability" to exclude uncomplicated childbirth—a policy in place since 1925—must be viewed by this Court as Congressional ratification of that policy.

■ It is true that

> ... under some circumstances, Congress' failure to repeal or revise in the face of such [longstanding] administrative interpretation has been held to constitute persuasive evidence that the interpretation is the one intended by Congress.

*Zemel v. Rusk,* 381 U.S. 1, 11, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179 (1965). An essential element in a finding that Congressional inaction amounts to "ratification" of an administrative interpretation, however, must be a reasonable basis for presuming Congressional awareness of such interpretation. *U. S. v. Midwest Oil Co.,* 236 U.S. 459, 474, 35 S.Ct. 309, 313, 59 L.Ed. 673 (1914); *Zemel v. Rusk,* 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); *Norwegian Nitrogen Products Co. v. U. S.,* 288 U.S. 294, 313, 53 S.Ct. 350, 357, 77 L.Ed. 796 (1933).

There is no express indication that the VA's exclusion of normal parturition has been known to Congress. The only evidence offered by defendant demonstrating that Congress has at any time been aware of the VA's policy is a remark made by a witness at a hearing held in 1926 on H.R. 4472, an earlier (and unenacted) version of the bill which was ultimately enacted to amend the World War Veterans Act in 1926. At that hearing, a remark was made by the Veterans' Legislation Committee Chairman that VA treatment policies should be studied to determine whether women with non-service connected disabili-

---

**19.** S.Rep.No.94–1206, Part I, 94th Cong., 2nd Sess. (1976), *reprinted in* 5 U.S.Code Cong. & Ad.News 6355, 6366.

**20.** In 1975, total enrollment of women in the armed services constituted only 4.6%. *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 270 n. 21, 99 S.Ct. 2282, 2291 n. 21, 60 L.Ed.2d 870 (1978).

**21.** The Administrator has enacted regulations to implement the mandate of the Omnibus Act, including the retention of "women veterans" as a distinct group of eligibles. 38 C.F.R. § 17.-50b(d).

ties were receiving more services—including childbirth care—than women with disabilities of a service-connected nature. A witness representing the American Legion responded that "The Veterans' Bureau has held that childbirth is a physiological phenomenon and not a disability".[22] Defendant has been unable to offer any additional "evidence" of Congressional awareness of the VA policy now codified at 38 C.F.R. § 17.48(e), despite Congress' extensive legislative activity in the area of veterans' benefits over the past 55 years. A single remark made by a witness at a hearing on an unenacted bill—in 1926—cannot be found to constitute the "persuasive evidence" of Congressional ratification contemplated in *Zemel v. Rusk, supra.* There is also little reason to infer Congressional awareness of—or acquiescence to—this particular VA policy affecting women veterans only. It is reasonable to presume that the traditionally small numbers of women veterans has led to their limited voice in veterans' lobbying organizations, organizations which have often been responsible for legislative change.

In summary, the history of veterans' benefits legislation demonstrates an intent on the part of Congress to provide women veterans with equal access to available benefits, as well as to provide benefits which only women veterans would require. Although concrete evidence that Congress specifically contemplated uncomplicated parturition as a "disability" under § 601(1) is lacking, there is reason to believe that Congress intended, at least as early as 1976, a broad, non-discriminatory reading of that term to be applied by the Administrator in determining eligibility for hospital care benefits.[23] Conversely, it is clear that no Congressional intent to exclude uncomplicated parturition specifically from the statutory definition of "disability" can be discerned, as defendant asserts. Section 17.-

48(e) cannot, therefore, be found to be "consistent" with § 610(a)(1)(B), and must be deemed in excess of the Administrator's authority under 38 U.S.C. § 210(c)(1).

**B.** *Review of § 17.48(e) Under the "Arbitrary and Capricious" Standard of the A.P.A.*

Section 17.48(e) also cannot be found to withstand scrutiny under 5 U.S.C. § 706(2)(A), which requires a reviewing court to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law".

■ When informal rulemaking by an administrative agency is challenged as being arbitrary, as is the case here, the regulation at issue must be tested against the standards of § 706(2)(A), which requires the reviewing court to

> ... consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment ... although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park v. Volpe, supra,* 401 U.S. at 416, 91 S.Ct. at 824. In its review of a challenge to the Federal Drug Administration's definition of the term "hypoallergenic", the D.C. Circuit Court found that

> The fact that an "arbitrary and capricious" standard applies to informal rulemaking, rather than a "substantial evidence" requirement cannot mean that *nothing* of an evidentiary nature is needed in the administrative record to support an agency decision.

---

**22.** Hearings on H.R. 4474 before the House Comm. on World War Veterans Legislation, 69th Cong., 1st Sess. 371 (1926).

**23.** Additionally, it is interesting to note that in 1978 Congress enacted the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) as an amendment to Title VII. The legislative history of the

Act reveals Congress' intent to overrule the Supreme Court's decision in *General Electric v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), and require that, for employment purposes, pregnancy, childbirth, and related medical conditions be treated in a similar fashion as other temporary disabilities.

*Almay, Inc. v. Califano*, 569 F.2d 674, 681 (D.C.Cir.1977) (emphasis in original). The court in *Almay* noted further that

> On the contrary, there being no evidentiary hearing [in informal rulemaking] ... it becomes all the more important that a rational basis for the agency's decision be found in the facts of the record. Review ... thus requires an inquiry into the facts and a determination of whether [the Commissioner's] decision was (1) based on "a consideration of the relevant factors" and (2) free of such error as would deprive it of a rational basis.

*Id.*, at 681. A challenged regulation must, therefore, be "sustainable on the administrative record made" in the formulation of that regulation. *Camp v. Pitts*, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

■ Unlike the rule at issue in *Almay v. Califano*, § 17.48(e) is not a recently-promulgated rule. It is, instead, a recent codification of a VA policy in effect since 1925.[24] Due to its lengthy history, determining what constitutes the "administrative record" for review purposes might pose some difficulty. This task is made simpler by the defendant's response to plaintiff's petition for repeal or revision of § 17.48(e). The defendant's memorandum dated January 26, 1978, was issued subsequent to the Appeals Board's final action, and is not, obviously, contemporaneous with the formulation or codification of § 17.48(e). The memorandum does reveal, however, those factors relied upon by the defendant in what amounts to his "re-adoption" of the regulation. Upon analysis, the administrative record—including both the historical and current rationale for § 17.48(e) enunciated in the defendant's January 26, 1978, memorandum—discloses no rational basis for that regulation.

*1. Consideration of the Relevant Factors*

The Administrator, in his memorandum to the Chairman, Board of Veterans Appeals, cites several factors in support of his conclusion that

> ... I believe 38 C.F.R. § 17.48(e) conforms to existing law and do not believe it can be changed, absent amendatory legislation.

It is apparent from defendant's memorandum denying plaintiff's petition that the defendant had reviewed the record compiled by the Board of Veterans Appeals, including the transcript of expert medical testimony presented by plaintiff before the Board.

In support of § 17.48(e), defendant relies first on VA Regulation 6048(c)(1) [currently codified at 38 C.F.R. § 17.48(c)(1)], which provides that

> "A disability, disease, or defect" will comprehend any acute, subacute, or chronic disease (of a general medical, tuberculosis, or neuropsychiatric type) or any acute, subacute, or chronic surgical condition *susceptible to cure or decided improvement by hospital care.* (Emphasis added.)

The definition provided under § 17.48(c)(1) is for the purposes of § 17.47(d), which provides for hospital care eligibility for veterans with non-service connected disabilities, where those veterans are indigent, and where the

> ... disability, disease, or defect which, *being susceptible to cure or decided improvement, indicates a need for hospital care...* (Emphasis added).

Uncomplicated parturition is thus beyond the scope of "disability", according to defendant, since it is deemed to be a condition not "susceptible to cure or decided improvement" through hospitalization.

Plaintiff has not challenged § 17.48(c)(1), or the defendant's authority to determine

---

**24.** Defendant argues that due to its long duration, "great deference" must be shown to the Administrator's interpretation of "disability" embodied in § 17.48(e). *Udall v. Tallman*, 380 U.S. 1, 15, 85 S.Ct. 792, 800, 13 L.Ed.2d 616 (1964). Although a presumption of regularity does attach to § 17.48(e), such presumption will not insulate § 17.48(e) from review under 5 U.S.C. § 706; deference must be shown only insofar as the record discloses a rational basis for that regulation. *Almay v. Califano, supra*, at 681.

whether a need for hospital care is indicated for any particular "disability." What plaintiff does challenge is the basis for the defendant's finding, as embodied in § 17.-48(e), that hospital care for uncomplicated childbirth is never "indicated".

In his memorandum of January 26, 1978, defendant cites two legal opinions issued by the VA General Counsel as bases for his support of § 17.48(e). In an opinion dated March 31, 1976, the General Counsel informed the VA's Chief Medical Director that

> This office has held that the ability to procreate and the existence of an uncomplicated pregnancy are not in themselves considered disabilities.

Exhibit B, Complaint, at p. 2. Neither the March 31, 1976, opinion of the VA General Counsel or the second cited opinion, dated February 17, 1974, have been made part of the administrative record available for review by this Court. The defendant states, however, that the February 17, 1974, opinion

> . . . reiterated a previous opinion (74 Op. Sol. 119) to the effect that pregnancy and parturition, uncomplicated, were physiological functions and therefore could not be considered as disabilities for which hospital action could be granted.[25]

The Solicitor, in his opinion dated May 10, 1944, (74 Op. Sol. 119) noted that

> . . . the precedent with regard to the non-entitlement of female veterans to hospitalization for an uncomplicated pregnancy and parturition has been in existence for *almost twenty years.* (Emphasis added.)

The practice of denying hospital care for uncomplicated parturition commenced in 1925 according to the Solicitor, when the then Veterans Bureau Medical Director pronounced the consensus of the Medical Service to be that normal childbirth was a physiological, rather than pathological, condition. That pronouncement was made in response to an opinion of the General Coun-

sel, VA, issued previously, which noted that whether or not normal childbirth constituted a disability within the meaning of the statute was a

> . . . determination . . . which is obviously not a matter within the jurisdiction of this office but within that of your [Medical] Service.

74 Op. Sol. 119 (1944). As an additional basis for § 17.48(e), the defendant cites an opinion of the Comptroller General issued December 11, 1929. In this opinion the Comptroller General denies authorization for the reimbursement of private hospital care expenses for a woman veteran during confinement. Defendant cites the opinion as holding that

> . . . the physiological process of pregnancy and parturition cannot be considered to lie within the same category as the ordinary disabilities to which ex-service persons are subject.[26] (Emphasis added.)

The defendant then states that "I am in complete agreement with the Comptroller General and my General Counsel." [27] This language, quoted verbatim by the defendant from the Comptroller's opinion, is itself a verbatim quote by the Comptroller from a letter dated January 16, 1929. The 1929 letter written by the then VA Medical Director continues by noting that

> At the present time [1929] there is no provision made or facilities available in any of our hospitals for the care and treatment of ex-service women during labor.

The Comptroller General thus based his denial of reimbursement for childbirth care costs on a 1929 medical opinion that childbirth—whether "normal" or "complicated" —did not constitute a disability within the meaning of the 1926 Act. This medical opinion seems based on a perception by the Medical Director that only "ordinary disabilities to which the ex-service person is liable" could be treated through hospitalization. Concern over the problem of making

---

**25.** Op. Sol. 119 is included in the Administrative record in this action.

**26.** Exhibit B, Complaint, at p. 3.

**27.** *Supra*, at p. 3.

the proper facilities available also appears to have influenced the decision of the Medical Director in 1929.

The challenged regulation, § 17.48(e), is thus endorsed by the defendant on the basis that (1) uncomplicated parturition is a physiological condition not "susceptible to cure or decided improvement" through hospitalization; and (2) uncomplicated parturition must be excluded as an eligible disability since it does not fall within the category of "ordinary" disabilities to which veterans are prone.

█ Assuming, *arguendo*, that the various legal and medical opinions incorporated by reference in defendant's memorandum of January 26, 1978, and fully agreed to by defendant, are "relevant factors", the facts of the record still fail to disclose a rational basis for § 17.48(e). The defendant's rejection of expert medical testimony offered by plaintiff was not, *per se*, arbitrary and capricious. *Angel v. Butz*, 487 F.2d 260 (10th Cir. 1973), *cert. denied*, 417 U.S. 967, 94 S.Ct. 3170, 41 L.Ed.2d 1138 (1973). The rejection of that testimony, however, when coupled with the insufficiency of the medical bases relied upon by the VA in its promulgation of § 17.48(e) constitutes "such error as would deprive [§ 17.48(e)] of a rational basis." *Almay, Inc. v. Califano*, *supra*.

The legislative history of pertinent veterans benefits statutes reveals absolutely no support for the contention that Congress intended hospital care benefits to be authorized only in the instance of "ordinary" disabilities. Even if such were the case, the increasing number of women veterans has resulted in an increasing number of veterans "prone" to experience childbirth, so that it is difficult to support parturition as an "extraordinary" non-service connected condition.

As part of the administrative record, plaintiff had submitted the testimony of a leading expert in human reproduction which emphatically contradicts the VA position that uncomplicated parturition is a physiological condition "not susceptible to cure or decided improvement" through hos-

pitalization. As analyzed above, defendant's denial of benefits to plaintiff was solely on the basis of § 17.48(e). That denial is thus founded on a purely *medical* basis. Despite § 17.48(e)'s foundation in medical opinion, the VA has apparently failed to consider any medical opinion which would refute that offered by the plaintiff; indeed, the administrative record fails to disclose any consideration by the VA of expert medical opinion more current than 1944 which supports its position.

In the testimony offered by plaintiff contained in the administrative record, plaintiff's expert states that the consensus of current medical opinion is that normal childbirth imperils the health of the mother, and thus requires hospitalization. Plaintiff's expert medical witness also states that, in his opinion, normal childbirth can be found to fall within three out of four currently accepted medical definitions of "disease". Plaintiff's expert testified further that any distinction between "physiological" and "pathological" is meaningless in determinations of the need for, and efficacy of, hospital care.

As *Camp v. Pitts*, *supra*, directs, this Court must be able to find § 17.48(e) "sustainable on the administrative record made."

Defendant has clearly failed to consider the requisite relevant facts in the promulgation of § 17.48(e), in his failure to seek and consider any medical opinion more recent than 1944 which would prove a medically sound basis for § 17.48(e). His failure to consider this highly relevant factor thus deprives the regulation of any rational basis.

█ Defendant's argument in this action also fails to supply a rational basis for § 17.48(e), even if the court were to overlook the fact that such arguments might constitute "post-hoc rationalizations" *Overton Park, supra*. Defendant argues that normal childbirth is not a "disease, injury, or other physical or mental defect" since it does not imperil the health of the mother. This argument is purely conclusory, how-

ever, and no factual support is offered for it.[28]  Defendant also contends that procreation is a voluntary endeavor, and that its voluntary aspect removes it from the Congressional scheme of compensating veterans for the sacrifices of service.  This argument is, in itself, irrational, and fails to provide a rational basis for § 17.48(e).  First, under this view, complicated parturition would not be subject to hospital care for the otherwise eligible veteran, since such parturition can be presumed to be voluntary in origin.  Defendant has, however, argued strenuously that hospital care is available in such cases.  Second, legislative history demonstrates no support for defendant's view that a woman's decision to forego childbearing during her term of active service is any less of a sacrifice than the loss during such period of the opportunity to purchase a home, as suggested by defendant.

## CONCLUSION

This Court can thus find that 38 C.F.R. § 17.48(e) is inconsistent with the intent underlying 38 U.S.C. §§ 601(1) and 610(a)(1)(B), and is therefore in excess of defendant's authority under 38 U.S.C. § 210(c)(1).  Additionally, § 17.48(e) cannot be found to be sustainable on any rational basis.  The merits of plaintiff's constitutional claim need not be examined here; it is a longstanding rule that constitutional questions, although properly presented, will not be considered where an action may be disposed of on other grounds.  *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1933).

For the reasons stated in this memorandum opinion, defendant's motion for dismissal or, alternatively, for summary judgment shall be denied.  Summary judgment is appropriate in favor of the plaintiff, and shall be granted.  Although the invalidity of § 17.48(e) makes the denial of benefits to plaintiff on the basis of that regulation improper, the determination of plaintiff's claim for reimbursement of the costs of her childbirth is a matter properly within the purview of the VA.  Plaintiff's claim for reimbursement is, therefore, remanded to the VA for decision on its merits notwithstanding the invalid provisions of 38 C.F.R. § 17.48(e).

---

**28.**  Defendant does concede that hospitalization is warranted from the perspective of the health of the infant, but argues that provision of hospital care on such basis is unauthorized.  The court recognizes that infants are not intended beneficiaries of statutory veterans' benefits.